IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA G. FENSTERSTOCK, an individual, on his own behalf and on behalf of all similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>EDUCATION FINANCE PARTNERS, a California corporation, and AFFILIATED COMPUTER SERVICES, INC., a Delaware Corporation,<br><br>Defendants | Civil Action No.<br><br>CLASS ACTION COMPLAINT<br><br>APR 15 2008<br>U.S.D.C. S.D.N.Y.<br>CASHIERS |

## CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Joshua G. Fensterstock ("Plaintiff"), on behalf of all others similarly situated, through his undersigned attorneys, states as follows:

## NATURE OF THE CLAIM

1. This is a nationwide class action arising from the fraudulent and deceptive advertising practices of Defendants Education Finance Partners ("EFP") and Affiliated Computer Systems, Inc. ("ACS") in connection with the solicitation, lending, and servicing of private consolidation loans.

2. Defendant EFP, which specializes in private student loans and is the holder of Plaintiff's private consolidation loan, engages in a scheme of deception whereby EFP intentionally fails to disclose to its borrowers the existence of a hidden penalty (the "Amortization Penalty") imposed upon borrowers who make timely payments and do not in any way violate the terms contained in their Promissory Notes (the "Notes"). Only upon Plaintiff's inquiry did Defendant ACS, the servicer of Plaintiff's loan and a participant in EFP's scheme, inform Plaintiff that, if a payment is received on a date other than the *exact*

*date* on which it is due (including payments made before the due date), then Defendants "may change the amounts that are applied to interest and princip[al]." The application of the Amortization Penalty allows Defendants, at their sole discretion, to prevent borrowers from paying off the principal of their loans and divert the entire payment to themselves as interest.

3. Plaintiff's Note, a contract drafted by Defendant EFP that expressly constitutes the entire understanding of the parties, does not include this Amortization Penalty. Nor is this Amortization Penalty disclosed in Defendant EFP's advertising materials. As a result of Defendants' undisclosed application of the Amortization Penalty, many of Plaintiff's payments have been applied to interest only, instead of a combination of interest and principal that formed the basis for Plaintiff's payment schedule. As Plaintiff's principal sits nearly untouched, it continues to accrue interest based on the incorrect principal amount. Plaintiff will not be able to pay off the loan principal, and at the end of the repayment period will be forced to make a final lump sum payment that will amount to thousands of dollars, instead of the $335.00 final payment to which Plaintiff agreed. By the end of Plaintiff's repayment period, Plaintiff will have paid much more than the amount he contracted to pay, as a direct and proximate result of the undisclosed Amortization Penalty. Defendant ACS, as the servicer of Plaintiff's Loan, participates in EFP's scheme by continuing to conceal the Amortization Penalty from members of the Class as they pay off their loans. Defendants' failure to disclose the Amortization Penalty was a deceptive advertising practice in violation of California law, the application of the Amortization Penalty is a breach of contract, and the continued failure to disclose the Amortization Penalty by both Defendants after Class members have entered into their repayment periods is fraud.

## JURISDICTION AND VENUE

4. Plaintiff brings this action pursuant to Cal. Bus. & Prof. Code §§ 17200 and

2

17500, for breach of contract, and for common law fraud. This Court has diversity jurisdiction over this action pursuant to 28 USC §1332(d). Defendant Education Finance Partners is a California corporation with headquarters in San Francisco, California. Defendant Affiliated Computer Services, Inc. is a Delaware corporation with headquarters in Dallas, Texas. Plaintiff asserts claims on behalf of a proposed class whose members reside throughout the United States. The aggregate of these claims exceeds the sum of $5,000,000.

5. Venue is proper before this Court under 28 U.S.C. § 1391(b) and (c).

## PARTIES

6. Plaintiff is an individual and a citizen of the State of New York. On August 9, 2006, Plaintiff executed a Loan Application and Promissory Note (the "Note") for a private consolidation loan from Defendant EFP to refinance Plaintiff's private student loans. Plaintiff and EFP agreed to a loan in the amount of $52,915.49 at a fixed rate of interest equal to 9.320% per annum. Plaintiff began repayment of his loan on October 14, 2006, and has since made timely payments in accordance with the Note.

7. Defendant EFP is a specialty finance company focused solely on providing private student loans through three channels of distribution: universities, partnerships with large companies, and directly to consumers. Defendant markets, originates and services student loans for undergraduate, graduate, and professional students throughout the United States. EFP is incorporated in California and headquartered in San Francisco, California.

8. Defendant ACS is a Delaware corporation with headquarters in Dallas, Texas. Defendant ACS is a Fortune 500 and S&P 500 company with approximately 60,000 employees providing business process outsourcing and information technology services to commercial and government clients. ACS's Education Services segment performs third party servicing for approximately 2.2 million federal student loans worth over $32.5 billion. In April 2005, ACS entered into a contract with Defendant EFP under

3

which ACS provides private loan origination and servicing on behalf of Education Finance Partners. ACS's service centers in Long Beach, California and Utica, New York are the bases of operation for ACS's support for Education Finance Partners. The ACS office that handled Plaintiff's correspondence in this matter is located in Utica, New York.

## CLASS ACTION ALLEGATIONS

9. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and a nationwide class of all others similarly situated who entered into private consolidation loans with Defendant EFP from March 1, 2005, through the date of certification of a class in this action.

10. The Class is so numerous that joinder of all members is impracticable. Although the exact number of Class members is presently unknown, Plaintiff believes that the Class consists of thousands of people.

11. There are questions of law and fact common to the members of the Class. These questions predominate over any questions affecting individual Class members. These questions include:

    a. Whether Defendant EFP's failure to disclose the Amortization Penalty was a deceptive advertising practice;

    b. Whether EFP intentionally failed to disclose the Amortization Penalty to Plaintiff and the Class;

    c. Whether Defendant ACS intentionally failed to disclose the Amortization Penalty to Plaintiff and the Class;

    d. Whether Defendants knew their failure to disclose the Amortization Penalty would cause harm to Plaintiff and the Class;

    e. Whether Defendant ACS participated in EFP's deceptive advertising practice;

    f. Whether the application of the Amortization Penalty is a breach of contract;

4

g. Whether Defendants' failure to disclose the Amortization Penalty during the Repayment Period is fraud; and

h. Whether the Arbitration Clause discussed herein is unconscionable and therefore unenforceable.

12. Plaintiff's Note and, on information and belief, the Notes of all other members of the Class, are governed by California law. Accordingly, the common questions discussed above will all be subject to the same governing law.

13. The claims of Plaintiff are typical of the claims of the Class because Plaintiff, like all members of the Class, entered into a Note with no knowledge of the hidden Amortization Penalty. Moreover, on information and belief, the Note is a form contract and is identical or nearly identical to the Notes signed by the members of the Class.

14. Plaintiff will fairly and adequately represent the interests of the Class. The interests of Plaintiff are identical, and not antagonistic to, those of the Class. Defendants have no defenses unique to Plaintiff. Plaintiff and the Class are represented by counsel who are experienced in the prosecution of class action litigation.

15. This class action is superior to the other available methods for a fair and efficient adjudication of this controversy because:

a. It is economically impractical for members of the Class to prosecute individual actions because the damages suffered by each Class member may be relatively small, thus the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous;

b. The Class is readily ascertainable and definable; and

c.  Prosecution as a class action will eliminate the possibility of repetitious litigation and inconsistent judgments against the defendants.

16. Plaintiff does not anticipate any difficulty in the management of this litigation. Because, on information and belief, all of the Notes relevant to this Action are governed by California law, Plaintiff does not anticipate any difficulty in the application of California law to the claims of all Class members.

## BACKGROUND

17. Students pursuing higher education in the United States have two options for borrowing money to fund their education: federal student loans and private student loans.

18. Federal student loans are made by the federal government and private institutions. Federal student loans are regulated by the federal government and contain many federally-mandated protections for borrowers, such as a 6.8% interest rate cap, income-based repayment, deferment, cancellation rights, and forgiveness in the event of death or total and permanent disability. Some federal loans are subsidized (meaning that the federal government pays interest on the loans while the student is in school and for the first six months after graduation) and insured by the federal government.

19. Private student loans are made by lenders to students and families outside of the federal student loan program. The private student loan industry is a $16 billion per year industry, with 25% annual growth forecasted for the next few years. Private loans are not subsidized or insured by the federal government and may be provided by banks, non-profits or other financial institutions.

20. Federal and private student loans share some similarities. Most relevant to this case is that both federal and private student loans may be consolidated. A consolidation loan is a single private loan created by combining existing student loans into one new loan, or refinancing one existing loan under new terms. The consolidation loan refinances the student loans with a new interest rate and

6

term. The borrower makes one monthly payment for the consolidation loan that, in most cases, is lower than the total monthly amount owed to the private loan holder(s). Federal and private loans cannot be consolidated with one another.

21.  Private loans differ from federal loans in several important aspects. First, unlike federal loans, private loans do not have a cap on the amount that can be borrowed. Many of the protections built into federal loans discussed above are not required to be included in private loans. In contrast to the interest rate cap of 6.8% for a federal loan, private loan interest rates are based on the borrower's credit rating and can become very expensive. According to data collected by the National Consumer Law Center, some students are paying interest rates as high as 19.32% on loans received from Defendant Education Finance Partners.

22.  Shopping for private loans is much different from shopping for federal loans. Objective information regarding private loans is hard to come by: according to an investigation by New York Attorney General Andrew Cuomo, at least some web sites that claim to offer comparison services are in reality serving as cover for particular lenders.

23.  Finally, many private lenders sell private loans with the specific goal of pooling the loans for investors in securitizations. These securitizations make private loans highly profitable for lenders. However, the lenders must sell enough loans to generate sufficient pools of loans to sell to investors. This is a key characteristic of a "push market," where products are offered not only in response to consumer need, but also due to investor demand. Defendant Education Finance Partners completed a securitization of its loans for over $340 million in the year 2006.

24.  In recent years, financial aid officers at many schools have become wary of private loans due to the potential for harsh terms that can harm borrowers. Thus, many private lenders have bypassed the schools and have marketed their private student loan products directly to consumers.

## SUBSTANTIVE ALLEGATIONS

25.     In or about June 2006, Plaintiff received a solicitation from Defendant Education Finance Partners regarding private consolidation loans. On or about August 8, 2006, Plaintiff executed a Loan Application and Promissory Note (the "Note") for a consolidation loan from EFP. The Note states in relevant part:

> The terms and conditions set forth in this Promissory Note, and the Spread and Origination Fee disclosed in the notice of pre-approval that [EFP] will send to [Plaintiff] constitute the entire agreement between [EFP] and [Plaintiff] with respect to the Loan and there are no other written or oral agreements or understandings between Us.

26.     Additional relevant terms include the following, which are quoted below in a different order than that in which they appear in the Note:

> **Interest After Maturity.** Unless prohibited by applicable law, interest shall continue to accrue at the applicable fixed [rate] on the unpaid Principal balance until paid in full....
>
> **Late Charges.** If any portion of a monthly payment remains unpaid for a period of more than five (5) calendar days after the due date, I will be assessed and pay a late payment charge of $25.00.
>
> **No Amendment or Modification.** Except for any forbearance of payments . . . you and I must jointly agree in writing to modify any provision of the Note.
>
> **Governing Law.** This Note will be deemed to have been made in California, and your decision on whether to lend me money will be made in California. Consequently, the provisions of this Note will be governed by federal laws and the laws of the State of California, without regard to conflict of laws rules.

27.     Pursuant to the Note, Plaintiff received a private consolidation loan (the "Loan") in the amount of $52,915.49. The interest rate, pursuant to the Note, is a fixed rate of 9.32%.

28.     The Note states that payments made by Plaintiff "will be applied first to charges, costs and fees, next to unpaid interest, and then to Principal."

29.     Plaintiff's repayment period (the "Repayment Period") began on October 14, 2006. Plaintiff is required to make 348 monthly payments of $440.74 (a total of approximately

8

$153,377.52), and one final payment of $361.92. This final payment is to be made on October 14, 2035. Plaintiff therefore will pay over $100,000.00 in interest on his initial Loan of $52,915.49, according to the terms of the Note.

30. Beginning on October 14, 2006, and through the present, Plaintiff has made payments on the loan in a timely manner. Each month, plaintiff receives a statement summarizing his most recent payment, and informing Plaintiff as to the due date of his next payment, which is specified as the fourteenth day of each month. Plaintiff has not been charged late fees nor been declared in default of the terms of the Note.

31. Despite Plaintiff's timely payments, however, Defendants have imposed a penalty on Plaintiff that was not a part of the Note, nor disclosed to Plaintiff at any time before Plaintiff signed the Note. This hidden penalty was disclosed to Plaintiff only after Plaintiff contacted Defendant ACS with questions regarding, among other things, the application of Plaintiff's payments to interest and principal arising from the Loan.

32. According to Plaintiff's Statements, almost all of Plaintiff's payments have been applied to interest, and not principal. Of $7,051.84 paid to EFP between October 2006 and December 2007, only $213.39 has been applied to principal. The Amortization Schedule upon which the Note was based states that $476.58 should have been applied to principal.

33. On August 27, 2007, Plaintiff contacted Defendant ACS to inquire about this issue, among others. According to Defendant ACS, the Amortization Schedule was based on the assumption that each of Plaintiff's payments would be received on the 14th of each month. Defendant ACS stated in relevant part:

> The amounts listed [in the Amortization Schedule] are based upon your payment amount of $440.74 being received on the 14th of each month. Any changes in the date we receive each month's payment . . . may change the amounts that are applied to interest and principle [sic]. *This is in accordance with your promissory note.* (emphasis added).

9

This Amortization Penalty was never disclosed to Plaintiff, and, contrary to Defendant ACS's statement, is not a term of the Note.

34. As a result of the Amortization Penalty, Plaintiff will never be able to pay off his loan. While Plaintiff continues to make timely payments in the full amount required by the Note, the principal sits nearly untouched and continues to accrue interest, which compounds on the incorrect principal amount, which cannot be paid off. Plaintiff will therefore be forced to make a final, balloon payment at the end of his loan that will amount to thousands of dollars. This is different from the payment schedule that was disclosed to Plaintiff at the beginning of the Loan, which provided for a final payment of $335.00. On information and belief, this same penalty is applied uniformly to all members of the Class.

35. Defendants knew of the Amortization Penalty and failed to disclose its existence to Plaintiff. Defendant EFP solicited Plaintiff and entered into the Note with Plaintiff, and failed to disclose the existence of the Amortization Penalty. Defendant ACS applied the Amortization Penalty with full knowledge that the Amortization Penalty was not a part of the Note. The failure to disclose the Amortization Penalty was a deceptive lending practice. The application of the Amortization Penalty is a breach of contract and common law fraud.

### Harm to Plaintiff and the Class

36. Plaintiff and the Class have been harmed by the undisclosed Amortization Penalty imposed upon them by Defendants. According to the Amortization Schedule, Defendants should have applied $476.58 toward the Principal of Plaintiff's Loan from the beginning of the Repayment Period through December 2007. As a result of the undisclosed Amortization Penalty, however, only $213.39 has been applied toward the Principal. The difference, an amount of $263.19, continues to accrue interest along with the rest of the Principal. At this rate, and as a

10

direct result of Defendants' improper application of Plaintiff's payments almost entirely to interest, Plaintiff will never be able to pay off his Loan. At the end of the repayment period, Plaintiff will be required to make an enormous lump-sum payment that will amount to thousands of dollars, not $335.00 as stated in the Note. Plaintiff will have paid much more than the $153,377.52 that Plaintiff has agreed to pay. With each payment Plaintiff makes during the repayment period, Plaintiff is further harmed.

37. Defendants have intentionally engineered a scheme to defraud Plaintiff and the Class. Defendants knew that payments received on a date other than the 14th of each month would be applied almost entirely, if not entirely, to interest, a term that was not included in the Note. Defendants are sophisticated lending companies with years of experience in the private student loan business. Defendants knew that Plaintiff and the Class cannot control the exact date on which payments are received by Defendants such that payments are received on exactly the 14th day of each month. Thus, Defendants knew that, despite making timely payments, the payments made by Plaintiff and the Class would almost certainly be applied to interest only, and not principal, thus harming Plaintiff and the Class. Defendants failed to disclose these facts to Plaintiff and the Class.

### The Arbitration Clause in Plaintiff's Note is Unconscionable and Against Public Policy

38. Defendants are aware that the Amortization Penalty is not disclosed to prospective borrowers. Defendants, as sophisticated lenders, also know that borrowers will be harmed as a result of the Amortization Penalty.

39. The Note contains an extensive arbitration clause. Among other things, the arbitration clause includes a class action waiver that states, "[c]laims made as part of a class action or other representative action [are subject to arbitration], and the arbitration of such Claims must proceed on an individual (non-class, non-representative) basis."

11

40. The insertion of the arbitration clause and class action waiver into the Note is an attempt by Defendants to exculpate themselves from liability for their fraudulent and deceptive practices. The practical effect of the arbitration clause and class action waiver is to disenfranchise Plaintiff and the Class by restricting their ability to economically enforce their rights under the Notes. Individual actions by each of the defrauded Class members are impracticable because the amount of individual recovery may be insufficient to justify bringing an individual action.

41. Moreover, the Notes have all the indicators of a classic "take it or leave it" contract of adhesion. Defendants have superior bargaining power, as Defendants are established lending companies with hundreds of millions of dollars in cash and assets, while Plaintiff and the Class are graduating students who face years of paying off school loans in addition to uncertainties in the job market. Defendants drafted the Notes, and Plaintiff and the Class had no meaningful choice with regard to the terms of the Notes.

42. As part of a scheme to injure, defraud and/or deceive Plaintiff and the Class, Defendants used their superior bargaining power to force Plaintiff and the Class to enter into Notes with class action waivers. The class action waiver in the arbitration clause is one-sided: there is little chance Defendants would sue Plaintiff or the members of the Class in a class action.

43. Further to and as a part of this scheme, Defendants intentionally failed to disclose the hidden penalties to Plaintiff and the Class, thus cheating Plaintiff and the Class out of predictably small amounts of money that may not justify bringing individual actions against Defendants.

## COUNT I

## BREACH OF CONTRACT
(Against All Defendants)

44. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

45. Plaintiff and the Class contracted with Defendant EFP to receive private consolidation

loans for the purpose of repaying their private student loans. Defendant ACS is the servicer of Plaintiff's Loan.

46. The Note is a binding contract and sets forth the entire agreement of the parties.

47. The Note does not authorize Defendants to apply the Amortization Penalty. In violation of the Note's clear terms, Defendants applied Plaintiff's timely payments to interest when those payments were received on dates other than the 14th of the month.

48. This alteration of the terms of Plaintiff's Note is a breach of contract, and Plaintiff has been harmed thereby.

## COUNT II

### FALSE AND DECEPTIVE ADVERTISING PRACTICES
### CAL. BUS. & PROF. CODE § 17500 ET. SEQ.
(Against Education Finance Partners)

49. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

50. California's False Advertising law (Bus. & Prof. Code §§ 17500, *et seq.*) makes it unlawful for any person to make or disseminate or cause to be made or disseminated any advertising statement concerning services which is untrue or misleading and which is known, or by the exercise of reasonable care should be known, to be untrue or misleading.

51. Defendant's web site, disclosures, and advertising materials, as well as the Note, fail to inform Plaintiff and the Class of the Amortization Penalty.

52. Defendant knew or should have known that their disclosures failed to inform Plaintiff and the Class of the Amortization Penalty.

53. Accordingly, Defendant has violated Cal. Bus. & Prof. Code § 17500, *et seq.* Plaintiff has been harmed thereby.

## COUNT III

## UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES
## CAL. BUS. & PROF. CODE § 17200
(Against All Defendants)

54.  Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

55.  The acts and practices of Defendants as alleged herein constitute unlawful, unfair, and fraudulent business practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

56.  Defendants have engaged in unlawful business acts and practices by violating Bus. & Prof. Code §§ 17500, *et seq* and by the other unlawful acts alleged in this Complaint.

57.  Defendants have engaged in an unfair and fraudulent business practice by failing to disclose to Plaintiff and the Class that, if their payments are made on days other than the 14th of each month, their payments will be applied only to interest, thus drastically altering the terms of the Notes.

58.  Plaintiff and the Class have been harmed thereby.

## COUNT IV

## COMMON LAW FRAUD
(Against All Defendants)

59.  Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

60.  Defendant Education Finance Partners drafted Plaintiff's Note, and ACS, as a servicer of Plaintiff's Loan, is familiar with the terms of the Note. Defendants knew of the existence of the Amortization Penalty and intentionally kept its existence from Plaintiff and the Class.

61.  In failing to disclose the existence of the Amortization Penalty to Plaintiff and the Class, Defendants intend for Plaintiff and the Class to continue making payments on their Notes without knowledge that they are paying more than they have contracted to pay. In continuing to make payments, Plaintiff and the Class have justifiably relied on Defendants' representations that the Note constituted the

entire understanding of the parties, and Plaintiff and the Class had no reason to believe that the Amortization Penalty existed.

62.  Defendant ACS's monthly statements specify the due date for each payment as the fourteenth day of each month. Defendants, however, fail to disclose that paying on a date other than the fourteenth of the month will cause Defendants to apply the Amortization Penalty. Defendants know that Plaintiff and the Class cannot control the exact date of ACS's receipt of the monthly payment, and that Plaintiff and the Class will be required to pay the undisclosed Amortization Penalty despite making timely payments on their Notes.

63.  Plaintiff and the Class have been harmed thereby.

## JURY TRIAL DEMAND

64.  Plaintiff and the Class are entitled to and hereby request a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief for Plaintiff and the Class:

(a) certifying this Action as a class action pursuant to Rule 23;

(b) declaring the arbitration clause and class action waiver in the Notes to be void as against public policy;

(c) awarding actual damages to Plaintiff and the Class;

(d) awarding punitive damages to Plaintiff and the Class;

(e) awarding attorneys' fees and costs incurred in the prosecution of this Action;

(f) enjoining De fendants from continuing their deceptive practices; and

(g) awarding any other relief the Court deems just and appropriate.

Dated: April 15, 2008

                        ABBEY SPANIER RODD & ABRAMS, LLP

                        By: _____
                              Karin E. Fisch (KF-1082)
                              kfisch@abbeyspanier.com
Orin Kurtz (OK-7334)
okurtz@abbeyspanier.com
212 East 39th Street
New York, New York 10016
Telephone: (212) 889-3700
Facsimile: (212) 684-5191

MCLAUGHLIN & STERN, LLP
Alan Sash (AS-8804)
asash@mclaughlinstern.com
260 Madison Avenue
New York, New York 10016
Telephone: (212) 448-1100