Edward K. Lenci (EL 3207)
HINSHAW & CULBERTSON LLP
780 Third Avenue, 4th Floor
New York, New York  10017
212-471-6200
*Attorneys for Affiliated Computer Services, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSHUA G. FENSTERSTOCK, an individual,             Case No. 08 Civ. 3622 (TPG)
on his own behalf and on behalf of
all similarly situated,

                          Plaintiff,
       -against-

EDUCATION FINANCE PARTNERS, a
California Corporation, and AFFILIATED
COMPUTER SERVICES, INC., a Delaware
Corporation,

                         Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT AFFILIATED COMPUTER SERVICES, INC.'S
<u>MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS IN THIS CASE</u>**

## **PRELIMINARY STATEMENT**

Defendant Affiliated Computer Services, Inc. ("ACS"), by its attorneys, Hinshaw & Culbertson LLP, respectfully submits this memorandum of law in support of its motion, pursuant to 9 U.S.C. §§3 and 4, to compel arbitration of the claims made in the Complaint by Plaintiff Joshua G. Fensterstock ("Fensterstock" or "Plaintiff"), in accordance with the terms and conditions of the arbitration agreement he signed, and to stay further proceedings in this Court pending the completion of such arbitration. The Court is respectfully invited to refer to the accompanying Declaration of Edward K. Lenci ("Lenci Decl.") for the exhibits submitted in support of ACS's motion.

Plaintiff alleges that, pursuant to the Loan Application and Promissory Note (the "Note") that he signed on August 8, 2006, ACS's co-defendant, Education Finance Partners ("EFP"), agreed to consolidate Fensterstock's student loans. (Plaintiff's Complaint, ¶6 (Lenci Decl. Ex. A) and the Note (Lenci Decl. Ex. B)). As further alleged in the Complaint, EFP has an agreement with ACS whereby ACS agreed to, *inter alia*, "provide[] private loan origination and servicing on behalf of Education Finance Partners" and ACS services Plaintiff's loan pursuant to that agreement. (Ex. A., ¶8) The Complaint's allegations are to the effect that ACS's alleged misconduct is founded upon and intertwined with the Note and that there is a close relationship between EFP and ACS by virtue of their alleged concerted misconduct.

The Note executed by Plaintiff, who is an attorney admitted to practice in 2004, contains a broad arbitration provision. (For the Court's convenience, a copy of the arbitration provisions of the Note is Lenci Decl. Ex. C)[1]

---

[1] Despite Fensterstock's allegation that "Plaintiff and the Class are graduating students" (Complaint, ¶41), Plaintiff actually has been out of school since 2003 and is a licensed and practicing New York attorney who was admitted to practice in 2004, prior to his execution of the Note in 2006. *See* Lenci Decl. Ex. D; *See also* Section C of the Argument, *infra*.

1

Accordingly, based on the doctrine of estoppel, the Court should compel arbitration of Plaintiff's dispute with ACS, which clearly falls within the arbitration provisions of the Note, in accordance with the terms of the arbitration agreement. (Ex. C)  Additionally, the Court should stay proceedings pending the completion of arbitration.

## RELEVANT FACTS

### A.  The Note's Arbitration Provisions

The Note contains a broad arbitration provision.  In particular, the arbitration provision includes Plaintiff's agreement to the arbitration of:

> claims relating to: 1) <u>any and all aspects of my Account including without limitation the origination establishment, terms, treatment, operation, handling, billing, servicing,</u> limitations on or termination or acceleration of my Account: 2) any disclosures or statements relating to my account;  3) the application, enforceability or interpretation of my Account, including this arbitration provision.  Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the <u>broadest</u> way the law will allow it to be enforced.

> Claims based on <u>any</u> theory of law, <u>any</u> <u>contract</u>, <u>statute</u>, <u>regulation</u>, ordinance, tort, (including <u>fraud</u> or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or <u>any other legal or equitable ground</u> (including any claim for injunctive or declaratory relief).

> Claims that arose in the past, or arise in the present or future.  <u>Claims are subject to arbitration whether they are made independently or with other claims in proceedings involving you, me or others.</u>

(*Id.* )(underscore added).

2

B. **Fensterstock's Claims**

Despite the broad arbitration clause he entered, Plaintiff Fensterstock now asserts a claim in this Court against both defendants that squarely implicates the Note. All of Fensterstock's claims relate directly to the Note, which he himself alleges "expressly constitutes the entire understanding of the parties." (Ex. A, ¶3)[2] As noted already, the Complaint's allegations are to the effect that ACS's alleged misconduct is founded upon and intertwined with the Note and that there is a close relationship between EFP and ACS by virtue of their alleged concerted misconduct. Accordingly, Fensterstock's breach of contract, violation of California business practices regulations, and common law fraud claims against ACS plainly and indisputably concern the Note, even though ACS is not a party to it.[3] (Ex. A, ¶¶ 44-48, 54-63)

## ARGUMENT

A. **The Broad Arbitration Clause in the Agreement Creates A Presumption of Arbitrability**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. §2.

There is a strong federal policy favoring arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *E.g., Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 369 (2d Cir. 2003). Indeed, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts *shall* direct

---

[2] ACS is not a party to the Note and so denies any allegation or claim by Plaintiff that, *inter alia,* ACS can have breached it. Nor should ACS's seeking to compel arbitration be deemed an admission or agreement that it is a party to the Note. As explained in the Argument, ACS is entitled to arbitration of Plaintiff's claims under the doctrine of estoppel, which assumes ACS is not a party to the Note.

[3] Additional facts relevant to Plaintiff's "unconscionability" claim are set forth in Section C of the Argument.

the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (*quoting Dean Witter Reynolds Inc v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985))(emphasis in original).

The language of the arbitration clause is, as a matter of law, broad. *See In re Currency Conversion Fee Anit-Trust Litig.*, 265 F.Supp.2d 385, 405 (S.D.N.Y. 2003); *See also Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 20 (2d Cir. 1995); *ADR/JB Corp. v. MCY III, Inc.*, 299 F.Supp.2d 110, 114 (E.D.N.Y. 2004) ("An arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered 'the paradigm of a broad clause.'").

Where an arbitration clause is broad, there is a presumption of arbitrability and the burden shifts to the "party resisting arbitration to demonstrate that the disputed issue is collateral." *ACE Capital Re Overseas Ltd. v. United Life Ins. Co.*, 307 F.3d 24, 35 (2d Cir. 2002). Even if a disputed issue is collateral to the contract containing an arbitration clause, it will nonetheless be arbitrated if it "implicates issues of contract construction or the parties' rights and obligations under it." *Collins & Aikman,* 58 F.3d at 23; *See also Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) ("When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated . . . ."). Fensterstock's claims against ACS are central to the Note, not collateral to it. *Cf. In re Currency Conversion Fee Anit-Trust Litig.*, 265 F.Supp.2d at 406-407; *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983).

B.   **Fensterstock Is Required To Arbitrate With ACS By Estoppel**

Plaintiff alleges that the Note "expressly constitutes the entire understanding between the parties" and that ACS "participates in EFP's scheme" to "impose a hidden penalty." (*See* Ex. A, ¶¶3, 8, 31, 37) In fact, there can be no question that Plaintiff's allegations against ACS are founded upon and intertwined with the Note—indeed, without the Note, there is no dispute—and that Plaintiff alleges a close relationship between EFP and ACS by virtue of their alleged concerted misconduct. (*See* Ex. A) Accordingly, Fensterstock should be compelled to arbitrate the dispute with ACS. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177-78 (2d Cir. 2004)(reviewing Second Circuit authorities); *In re Currency Conversion Fee Anit-Trust Litig.*, 265 F.Supp.2d at 401-402; *In re Currency Conversion Fee Anit-Trust Litig.*, No. 04 Civ. 5723, 2005 WL 2364969 *4-7 (S.D.N.Y. 2005).

C.   **Plaintiff's Own Allegations, Qualifications and Circumstances Disprove Any Alleged "Unconscionability"**

Not surprisingly, Plaintiff seeks to escape the arbitration agreement he signed by asserting that it is "unconscionable and against public policy." (Ex. A, ¶¶ 38-42) However, factual allegations that Plaintiff makes in his Complaint,[4] and publicly available information about Plaintiff, demonstrate the meritlessness of this assertion.

First, while Plaintiff alleges that the damages he and other purported members of this Class may incur "may be insufficient to justify bringing an individual action" (*Id.* ¶40), Paragraphs 3, 34, and 36 of Plaintiff's Complaint contradict this characterization of his (and the purported class members') alleged damages:

> 3.   Plaintiff will not be able to pay off the loan principal, and at the end of the repayment period will be forced to make a lump

---
[4] By citing these factual allegations, ACS is not admitting them or agreeing in any way that Plaintiff was wronged or damaged. ACS is merely using Plaintiff's own allegations of fact in order to show that the arbitration provision of the Note cannot be deemed unconscionable.

5

> sum payment that will amount to <u>thousands of dollars</u>, instead of the $355.00 final payment to which Plaintiff agreed.
>
> 34. As a result of the Amortization Penalty, <u>Plaintiff will never be able to pay off his loan</u>. ... [T]he principal sits nearly untouched and continues to accrues interest, which compounds on the incorrect principal amount, which cannot be paid off. Plaintiff will therefore be forced to make a final, balloon payment at the end of his loan that will amount to <u>thousands of dollars</u>.
>
> 36. At the end of the repayment period, ... Plaintiff will have paid <u>much more than the $157,377.52</u> that Plaintiff has agreed to pay.

(*Id.* ¶¶ 3, 34, 36)(underscore added). Indeed, Plaintiff avers that he will have to pay "an <u>enormous</u> lump sum payment." (*Id.* ¶ 36)(underscore added).

In other words, although Plaintiff does not specify the precise amount of his alleged damages, Plaintiff's own allegations show that he seeks an amount far in excess of the nominal amounts that some courts have found to be insufficient to justify an individual action. (ACS will address such caselaw in the event Plaintiff raises it in his opposition papers, if any).

Plaintiff also alleges that "Plaintiff and his Class are graduating students who face ... uncertainties in the job market" (*Id.* ¶41), but Plaintiff is not a "graduating student," nor was he a "graduating student" at the time he decided to consolidate his student loan debt in 2006. As shown by the documents collectively attached to the Lenci Decl. as Ex. D, Plaintiff Fensterstock is an attorney who graduated from Hofstra University School of Law in 2003 and was admitted to practice in New York State in 2004. He is currently an attorney with the law firm of Isaacs & Associates in New York City. Before that he worked for another law firm and, before that, was counsel to the Nassau County Comptroller.

6

In fact, Plaintiff and Isaacs & Associates describe his qualifications[5] in such a way that there can be little, if any, doubt that he had a sophisticated business and legal acumen well before he signed the Note in 2006. For example, the website of Isaacs & Associates states as follows:

> Joshua G. Fensterstock practices primarily in the area of real estate law; including, negotiating contracts, drafting commercial leases, and representing clients at closings of purchases and sales of residential and commercial properties. Joshua is also involved in the firm's corporate practice.
>
> Before joining Isaacs & Associates, Joshua was employed as an associate at a firm where he represented lenders at the closings of purchases of residential and commercial properties. Prior to his work in the private sector, Joshua served as counsel to the Nassau County Comptroller.
>
> Born in New York City, Joshua received his J.D. from Hofstra University School of Law in 2003. While in law school, Joshua interned for the Honorable Arthur D. Spatt, United States District Judge for the Eastern District of New York. Joshua was admitted to practice law in New York (2d Dep't) in 2004 and received his B.S. magna cum laude from the State University of New York at Albany in 1999, where he majored in business administration.

(Ex. D)

Additionally, Plaintiff's own description of himself on a popular networking website, Linkedin, is as follows:

> I practice primarily in the area of real estate law; including, negotiating contracts, drafting commercial leases, and representing clients at closings of purchases and sales of residential and commercial properties. I am also involved in the firm's corporate practice.
>
> **Specialties:**
>
> Development and construction financing; 1031 tax-deferred exchanges; acquisitions and sales of commercial and multi-family residential buildings, and vacant land; diverse financing

---

[5]It is assumed that Plaintiff's and Isaacs & Associates's representations as to Plaintiff's business and legal acumen are accurate given the proscription of DR 2-101 that, *inter alia,* "A lawyer or law firm shall not use or disseminate or participate in the use or dissemination of any advertisement that … contains statements that are false, deceptive or misleading…"

7

>transactions including bridge loans, revolving credit facilities, sale-leasebacks, and leasehold mortgage loans; real estate workouts and foreclosures; leasing and subleasing transactions for commercial properties; management and brokerage contracts; condominium (condo) and cooperative housing (co-op) transactions.

(Ex. D.)

Plaintiff's allegation that he "had no meaningful choice with regard to the terms of the Notes" (Ex. A, ¶41) is a distortion of reality. It is unclear from the Complaint how Plaintiff "had no meaningful choice" but to enter into the Note. Be that as it may, the Note is, as stated in the Complaint, a result of a consolidation of Plaintiff's student loans, occurring <u>after</u> he graduated from law school, with the benefit to him that he "makes one monthly payment for the consolidation loan that, in most cases is lower than the total monthly amount owed to the private loan holder(s)." (*Id.* ¶20) In other words, Plaintiff was not a struggling student who would have had to forego the benefit of college or law school unless he entered the Note. Rather, he was a professional who was simply seeking the benefit of making one easy payment per month and perhaps getting a better rate of interest than afforded by his existing loans.

Any allegation that the defendants used "superior bargaining power" (*Id.* ¶¶41, 42) is fatuous for much the same reason. Plaintiff, as noted, was a New York lawyer when he entered the Note. He was merely trying to refinance and consolidate his current student loans in order to make one monthly payment at a supposedly lower rate of interest. Moreover, since he was not, as he alleges, a "graduating student[]," but, rather, was three years out of law school, refusing to enter the Note would not have prevented him from pursuing an educational dream. Instead, he merely would have been required to live by the terms of his other loan obligations. Thus, if Plaintiff did not like the terms and conditions of the Note, he could have refused to enter into it.

8

## CONCLUSION

For the foregoing reasons, Defendant ACS respectfully requests that this Court enter an Order: (a) compelling Fensterstock to arbitrate his claims against ACS in accordance with the terms of the arbitration provisions of the Note; (b) staying these proceedings pending the completion of arbitration; and (c) preserving all of ACS's rights and defenses pending the completion of arbitration, including tolling any applicable time limitations for answering or otherwise responding to the Complaint.

Dated: New York, New York
       June 5, 2008

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: _____
    Edward K. Lenci (EL 3207)

780 Third Avenue
New York, New York 10017
212-471-6200

*Attorneys for Affiliated Computer Services, Inc.*