Karin E. Fisch (KF 1082)
Orin Kurtz (OK 7334)
Abbey Spanier Rodd & Abrams, LLP
212 East 39th Street
New York, New York 10016
212.889.3700

Alan E. Sash (AS 8804)
McLaughlin & Stern, LLP
260 Madison Avenue
New York, New York 10016
212.448.1100

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JOSHUA G. FENSTERSTOCK, an individual,            Case No. 08 Civ. 3622 (TPG)
on his own behalf and on behalf of all
similarly situated,

                        Plaintiff,

        -against-

EDUCATION FINANCE PARTNERS, a
California Corporation, and AFFILIATED
COMPUTER SERVICES, INC., a Delaware
Corporation,

                        Defendants.

-------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AFFILIATED COMPUTER SERVICES, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS IN THIS CASE

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  PRELIMINARY STATEMENT .................................................................................. 1

II. STATEMENT OF FACTS ........................................................................................... 3

III. LEGAL ARGUMENT ................................................................................................ 6

    A.  Applicable Legal Principles .............................................................................. 6

    B.  The Arbitration Clause is Unconscionable ...................................................... 7

    C.  The Class Action Waiver is Unconscionable ................................................... 8

        1.  The Note is a Contract of Adhesion ...................................................... 10

        2.  Each Class Member Has Suffered Predictably Small Damages ...................... 11

        3.  Defendants Carried Out a Scheme To Deliberately Cheat Large Numbers of Consumers .............................................................................................. 12

    D.  ACS Does Not Have Standing to Compel Arbitration ................................... 15

IV. CONCLUSION .......................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

Am. Medical Ass'n v. United Healthcare Corp.,
00 Civ. 2800 (LMM) (GWG), 2003 U.S. Dist. LEXIS 14686
(S.D.N.Y. Aug. 22, 2003) ............................................................................................ 15, 16

Aral v. Earthlink, Inc.,
134 Cal. App. 4th 544 (2d App. Dist. 2005) .................................................................. 10

Brazil v. Dell Inc.,
No. C-07-01700-RMW, 2007 U.S. Dist. LEXIS 59095
(N.D. Cal. Aug. 3, 2007) ........................................................................................ passim

Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,
346 F.3d 360 (2d Cir. 2003) ............................................................................................ 6

Chase Mortgage Company-West v. Bankers Trust Co.,
No. 00 Civ. 8150, 2001 U.S. Dist. LEXIS 6683 (S.D.N.Y. May 23, 2001) .................... 15

Choctaw Generation Ltd. P'Ship v. Am. Home Assurance Co.,
271 F.3d 403 (2d Cir. 2001) .......................................................................................... 15

Cohen v. DirecTV, Inc.,
142 Cal. App. 4th 1442 (2d App. Dist. 2006) .......................................................... 11, 12

Discover Bank v. Superior Court,
36 Cal. 4th 148 (2005) ............................................................................................ passim

Doctor's Assocs., Inc. v. Casarotto,
517 U.S. 681 (1996) ......................................................................................................... 6

In re Currency Conversion Fee Antitrust Litig.,
265 F. Supp. 2d 385 (S.D.N.Y. 2003) ............................................................................ 16

In re Currency Conversion Fee Antitrust Litig.,
MDL No. 1409, 2005 U.S. Dist. LEXIS 21084 (S.D.N.Y. Sept. 27, 2005)..................... 16

Janda v. T-Mobile, USA, Inc.,
No. C 05-03729 JSW, 2006 U.S. Dist. LEXIS 15748 (N.D. Cal. Mar. 17, 2006) ......... 7, 8

JLM Indus., Inc. v. Stolt-Nielsen SA,
387 F.3d 163 (2d Cir. 2004) .......................................................................................... 16

Nagrampa v. MailCoups, Inc.,
    469 F.3d 1257 (9th Cir. 2006) ................................................................. 9, 10, 14

Oestreicher v. Alienware Corp.,
    502 F. Supp. 2d 1061 (N.D. Cal. 2007) ........................................................... 11

Scott v. Cingular Wireless,
    161 P.3d 1000 (Wash. 2007) ........................................................................ 9

Shroyer v. New Cingular Wireless Services, Inc.,
    498 F.3d 976 (9th Cir. 2007) ..................................................................... 9, 10

Szetela v. Discover Bank,
    97 Cal. App. 4th 1094 (4th Dist. 2002) ................................................... 10, 13, 14

Thomson-CSF, S.A. v. Am. Arbitration Ass'n,
    64 F.3d 773 (2d Cir. 1995) ......................................................................... 15

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 and 17500.......................................................... 12
Cal. Civil Code §1668.................................................................................... 8
Federal Arbitration Act, 9 U.S.C. §1 ............................................................... 1, 6

Plaintiff Joshua G. Fensterstock ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion of defendant Affiliated Computer Systems, Inc. ("ACS"), to compel arbitration of this Action and stay proceedings pending arbitration.

## I.    PRELIMINARY STATEMENT

This is a nationwide class action arising from the fraudulent and deceptive practices of Defendants Education Finance Partners ("EFP") and ACS in connection with the solicitation, lending and servicing of private consolidation loans. Plaintiff's Class Action Complaint and Jury Trial Demand (the "Complaint") alleges that Defendants, as part of a scheme to defraud Plaintiff and the Class, applied a hidden penalty (the "Amortization Penalty"), by which Plaintiff's payments are applied wholly to interest instead of principal and which, if applied throughout Plaintiff's thirty-year repayment period, will prevent Plaintiff from paying off his loan. The Amortization Penalty was never disclosed to Plaintiff and the Class, nor was it permitted by the Loan and Promissory Note (the "Note"), which formed the entire understanding between Plaintiff and EFP.

Defendants have applied the Amortization Penalty to Plaintiff's loan despite the fact that Plaintiff has made timely payments on his loan and has never been declared in default. ACS, the company that acts as the "servicer" of the loan, disclosed the existence of the Amortization Penalty to Plaintiff only after Plaintiff inquired about the allocation of his loan payments between principal and interest.

ACS advances two arguments in support of its motion to compel arbitration.

*First*, ACS, which is not a party to the contract between Plaintiff and EFP, argues that Plaintiff should be compelled to arbitrate under the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* (the "FAA") because Plaintiff alleges a "close relationship" between ACS and EFP by virtue of their alleged concerted misconduct.

ACS, however, completely ignores the plain language of Section 2 of the FAA, and the Second Circuit's mandate that, before compelling arbitration pursuant to the FAA, the Court should examine the validity of the relevant arbitration clause under state law. The contract between Plaintiff and EFP states that the law of California governs any disputes arising thereunder. Declaration of Edward K. Lenci ("Lenci Decl.") Exh. B. Under California law, the arbitration clause in the Note is both substantively and procedurally unconscionable and, therefore, unenforceable. Accordingly, Plaintiff cannot be compelled to arbitrate by estoppel based on an unenforceable arbitration clause.

*Second*, ACS attempts to show that the arbitration clause in the Note is not procedurally unconscionable by virtue of the fact that Plaintiff is an attorney. ACS also speculates that Plaintiff was merely refinancing his student loans to save money, could have taken or left the contract with EFP, and that Plaintiff's damages are large enough to justify an individual action. As shown herein, none of these facts are sufficient to defeat a showing of unconscionability under California law. Moreover, ACS's assessment of Plaintiff's damages results from a distorted reading of the Complaint: as of December, 2007, Plaintiff had incurred approximately $263.19 in damages from the misallocation of his payments. However, if Defendants are permitted to apply the Amortization Penalty for the entire thirty year repayment period of the Note, then Plaintiff will be required to make an enormous lump sum payment *in the year 2035*. This is a far cry from ACS's distorted reading of the Complaint and its resulting inference that Plaintiff is seeking damages sufficient to justify an individual action.

Tellingly, ACS does not once reference the relevant state law that Plaintiff and EFP agreed to, which is the law of California. As set forth herein, ACS has made no showing that Plaintiff

should be compelled to arbitrate his dispute with Defendants. ACS's motion to compel arbitration should be denied in its entirety.

## II.    STATEMENT OF FACTS

In or about June 2006, Plaintiff received a solicitation from EFP regarding private consolidation loans. On or about August 8, 2006, Plaintiff executed a Loan and Promissory Note (the "Note") for a consolidation loan from EFP. Comp. ¶25.[1] ACS was not a party to the Note; on August 29, 2006, ACS notified Plaintiff that ACS "provides a Student Loan Billing Service to [EFP]," and would be "working with" EFP and Plaintiff as Plaintiff repays his loan. Declaration of Orin Kurtz ("Kurtz Decl.") Exh. A.

The Note stated that the terms contained therein constitute the entire agreement between EFP and Plaintiff with respect to Plaintiff's loan, and there are no other written or oral agreements or understandings between them. Comp. ¶25. The Note contains a choice of law provision which states:

> **Governing Law.** This Note will be deemed to have been made in California, and your decision on whether to lend me money will be made in California. Consequently, the provisions of this Note will be governed by federal laws and the laws of the State of California, without regard to conflict of laws rules.

Comp. ¶26.

Pursuant to the Note, Plaintiff received a consolidation loan in the amount of $52,915.49 with a fixed interest rate of 9.32%. Comp. ¶27. Over the nearly thirty year repayment period (the "Repayment Period") of the loan, Plaintiff would be required to make 348 monthly payments of $440.74, for a total of approximately $153,377.52, with one final payment of $361.92 to be made in the year 2035. Comp. ¶29. At the time Plaintiff entered into the Note, Plaintiff's gross monthly

---

[1]    As used herein, "Comp. ¶__" refers to the Class Action Complaint and Jury Trial Demand filed by Plaintiff on April 15, 2008.

income was $4,583.00. Lenci Decl. Exh. B. Thus, Plaintiff's monthly payments amounted to nearly ten percent of his gross income.

Beginning on October 14, 2006, and through the present, Plaintiff has made timely payments on his loan and has not been charged any late fee nor declared in default under the terms of the Note. Comp. ¶30.

Despite Plaintiff's timely payments, however, Defendants have imposed a hidden penalty (the "Amortization Penalty") on Plaintiff that was not a part of the Note, and at no time was disclosed to Plaintiff before Plaintiff signed the Note. Comp. ¶31. Only after Plaintiff contacted ACS, did ACS disclose to Plaintiff the substance of the Amortization Penalty. In a letter to Plaintiff, ACS stated:

> The amounts listed [in the Amortization Schedule previously sent to Plaintiff] are based upon your payment amount of $440.74 being received on the 14th of each month. Any changes in the date we receive each month's payment . . . may change the amounts that are applied to interest and principle [sic]. *This is in accordance with your promissory note.* Comp. ¶33 (emphasis added).

Thus, as Plaintiff understands, Defendants apply the Amortization Penalty even for timely payments that are received early, *before* the 14th of each month. Comp. ¶37.

The Amortization Penalty was not disclosed to Plaintiff before this letter, and was not a part of the Note. Comp. ¶33; *see* Declaration of Edward K. Lenci ("Lenci Decl.") Exhibit B (showing that the Amortization Penalty is not a part of the Note). Pursuant to the Amortization Penalty, Defendants applied almost none of Plaintiff's payments to the outstanding principal of his loan, and instead applied Plaintiff's payments to interest.

Thus, of $7051.84 Plaintiff paid to ACS between October 2006 and December 2007, only $213.39 was applied to principal. The amortization schedule on which the Note was based states

that $476.58 should have been applied to principal. Comp. ¶32. As of the date of the Complaint, therefore, Plaintiff had been harmed in the approximate amount of $263.19. Comp. ¶36.

As a result of the Amortization Penalty, Plaintiff will never be able to pay off his loan in accordance with the schedule upon which his Note was based, and will be forced to make a large balloon payment at the end of the Repayment Period, in the year 2035, if Defendants continue to apply the Amortization Penalty. Comp. ¶34. In order to cease the accrual of further damages and avoid having to make this large payment, Plaintiff included a request for an injunction in the Complaint.

The Complaint alleges that Defendants intentionally failed to disclose the Amortization Penalty to Plaintiff and the Class. Comp. ¶35. The Amortization Penalty continues to harm Plaintiff and the Class because payments that should have been applied to principal have instead been applied to interest, and thus the unpaid principal continues to accrue interest. Comp. ¶36.

The Complaint alleges that Defendants intentionally engineered a scheme to defraud Plaintiff and the Class. Comp. ¶37. Defendants know that the Amortization Penalty is not disclosed to borrowers, and, as sophisticated lenders, Defendants know that borrowers will be harmed as a result of the Amortization Penalty. Comp. ¶38.

Plaintiff's Note contains an extensive arbitration clause. Among other things, the arbitration clause includes a class action waiver that states, "[c]laims made as part of a class action or other representative action [are subject to arbitration], and the arbitration of such Claims must proceed on an individual (non-class, non-representative) basis." Comp. ¶39.

EFP intentionally inserted the arbitration clause in the Note as an attempt to exculpate itself from liability for its fraudulent practices. The practical effect of the arbitration clause is to disenfranchise Plaintiff and the Class by restricting their ability to economically enforce their rights

under the Notes. Individual action by Class members is impracticable because the amount of an individual recovery may be insufficient to justify bringing an individual action. Comp. ¶40. The Notes are classic "take it or leave it" contracts of adhesion: the Note is wholly drafted by EFP, a company with hundreds of millions of dollars of assets, forced upon Plaintiff and the Class, and Plaintiff and the Class were given no chance to negotiate the terms of the notes. Comp. ¶41. Moreover, the class arbitration waiver is one-sided: there is little chance that Defendants would sue Plaintiff or the members of the Class in their own class action. Comp. ¶42.

ACS was not a party to the note or any other agreement between Plaintiff and EFP. Lenci Decl. Exh. B. Moreover, no arbitration agreement exists between Plaintiff and ACS. *Id.*[2]

## III.    LEGAL ARGUMENT

As shown herein, ACS's motion should be denied because the arbitration clause and class action waiver in the Note are unconscionable under the law of California. Moreover, ACS does not have standing to compel Plaintiff to arbitrate this dispute.

### A.    Applicable Legal Principles

The Federal Arbitration Act, 9 U.S.C. §1 *et seq.* (the "FAA") provides that arbitration agreements are enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2; ACS Br. at 3.[3] "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). "Accordingly, while the FAA creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act, in evaluating whether the parties have entered into a valid

---

[2]    The procedural history of this action is brief. On April 15, 2008, Plaintiff filed his Class Action Complaint. On June 5, 2008, Defendant ACS filed its motion to compel arbitration. On June 30, 2008, Defendant Education Finance Partners filed its Answer to the complaint. No discovery has taken place.

arbitration agreement, the court must look to state law principles." Cap Gemini Ernst & Young,
U.S., L.L.C. v. Nackel, 346 F.3d 360, 364 (2d Cir. 2003) (citations omitted).

      The Second Circuit has held that "[i]t is clear that questions of contractual validity relating to
the unconscionability of the underlying arbitration agreement must be resolved first, as a matter of
state law, before compelling arbitration pursuant to the FAA." Id. at 365.

      Here, Plaintiff and EFP agreed that the laws of the State of California will govern the Note.
Lenci Decl. Exh. B; Comp. ¶26. ACS has not argued, and cannot argue, that there is reason for this
choice of law provision to be disregarded. Instead, ACS has chosen to ignore California state law
and has hinted that it will address California law only if Plaintiff argues in this memorandum of law
that California law governs. ACS Br. at 6.

    **B.**    **The Arbitration Clause is Unconscionable**

      In a recent decision, the California Supreme Court reaffirmed the well settled principle that,
under California law, "class action waivers in consumer contracts of adhesion are unenforceable,
whether the consumer is being asked to waive the right to *class action litigation* or the right to class
action arbitration." Discover Bank v. Superior Court, 36 Cal. 4th 148, 153 (2005) (emphasis added).
California courts have held that, where an unconscionable class action waiver is "part of the
arbitration provision and central to the mechanism to resolving the dispute between the parties, it
cannot be severed." Brazil v. Dell Inc., No. C-07-01700-RMW, 2007 U.S. Dist. LEXIS 59095, at
*22 (N.D. Cal. Aug. 3, 2007); Janda v. T-Mobile, USA, Inc., No. C 05-03729 JSW, 2006 U.S. Dist.
LEXIS 15748, at *25-26 (N.D. Cal. Mar. 17, 2006) (refusing to sever class action waiver where
arbitration clause was "permeated with an unlawful purpose").

---

[3]    As used herein, "ACS Br. at__" refers to the Memorandum of Law in Support of Defendant
Affiliated Computer Service, Inc.'s Motion to Compel Arbitration and Stay Proceedings in this Case.

Here, the class action waiver is central to the mechanism to resolving disputes between the parties. The arbitration clause prohibits class actions and class arbitrations in two separate places, stating:

- "Claims made as part of a class action or other representative action, and the arbitration of such Claims must proceed on an individual (non-class, non-representative) basis." Lenci Decl. Exh. C at 2.

- "All parties to the arbitration must be individually named. Claims by persons other than individually named parties shall not be raised or determined. . . . [N]o class action, private attorney general action or other representative action may be pursued in arbitration[.]" Lenci Decl. Exh. C at 3.

Thus, the prohibition on class actions and class arbitrations was central to, and informed, EFP's decision to include the entire arbitration clause in the Note. If the Court were to strike only the class action waiver in the arbitration clause, the Court would then be required to add provisions to the Note to address the procedure for bringing a class arbitration. Reformation of this sort is not permissible under California law. Janda, 2006 U.S. Dist. LEXIS 15748, at *25.

Accordingly, if the class action waiver is unconscionable (which Plaintiff has demonstrated below), then the entire arbitration clause should be stricken from the Note. Brazil, 2007 U.S. Dist. LEXIS 59095 at *23.

## C.    The Class Action Waiver is Unconscionable

In Discover Bank, the Supreme Court of California held:

when [a class action] waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . such waivers are unconscionable under California law and should not be enforced.

Discover Bank, 36 Cal. 4th at 162-63.[4]

---

[4]    In Discover Bank, the court based its decision in part on a strong public policy based in a California statute that states: "All contracts which have for their object, directly or indirectly, to exempt anyone from

The Ninth Circuit Court of Appeals has reached the same conclusion interpreting California law. See, e.g., Shroyer v. New Cingular Wireless Services, Inc., 498 F.3d 976 (9th Cir. 2007). Many California federal and state courts have held similarly, both before and after Discover Bank and Shroyer (Id. at 978 n.1, compiling federal cases) and, showing a clear trend, numerous courts from California's sister states have held the same. Scott v. Cingular Wireless, 161 P.3d 1000, 1003 (Wash. 2007) (compiling cases).

"Under California law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable." Shroyer, 498 F.3d at 981 (citing Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1280 (9th Cir. 2006). The two types of unconscionability need not both be present to the same degree. Rather, California courts apply a "sliding scale," so that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Nagrampa, 469 F.3d at 1280.

Generally, the procedural unconscionability analysis focuses on the circumstances in which a contract is entered into. "The standards for procedural unconscionability are satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to an inequality of bargaining power that results in no real negotiation in the absence of meaningful choice." Brazil, 2007 U.S. Dist. LEXIS 59095, at *12-13 (citations and quotation marks omitted).

---

responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Discover Bank, 36 Cal. 4th at 162-63 (citing Cal. Civil Code §1668).

In contrast, the substantive element focuses on the oppressive nature of the contract, and whether the contract contains unfair terms or a one-sided class action waiver. "Substantive unconscionability traditionally involves contract terms that are so one-sided as to shock the conscience, or that impose harsh or oppressive terms." Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1100 (4th Dist. 2002) (citation omitted).

"The California Courts of Appeal have construed Discover Bank as providing for a three-part inquiry in order to determine whether a class action waiver in a consumer contract is unconscionable." Shroyer, 498 F.3d at 983 (citations omitted). The test asks (1) whether the agreement is a consumer contract of adhesion drafted by a party that has superior bargaining power; (2) whether the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amount of damages; and (3) whether it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money. Id. at 983.

### 1.   The Note is a Contract of Adhesion

There can be no question that the Note is a contract of adhesion. "Under California law, a contract of adhesion is defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." Shroyer, 498 F.3d at 983 (citing Nagrampa, 469 F.3d at 1281) (citations, quotation marks and brackets omitted). Here, the Note is clearly standardized, and Plaintiff had no opportunity to negotiate its terms. The Note was sent to Plaintiff pre-written, and Plaintiff filled his name and financial information in at the top. See Lenci Decl. Exh. B. Plaintiff had no opportunity to negotiate the terms of the Note. Comp. ¶41. Moreover, EFP—the drafter of the Note—had superior bargaining power over Plaintiff as it is a multi-million dollar company specializing in student lending. Comp. ¶41. These characteristics fit squarely

within the definition of a contract of adhesion. Shroyer, 498 F.3d at 983-84; Aral v. Earthlink, Inc., 134 Cal. App. 4th 544, 557 (2d App. Dist. 2005) ("the terms of the agreement were presented on a 'take it or leave it' basis. . . . This is quintessential procedural unconscionability."); Brazil, 2007 U.S. Dist. LEXIS 59095, at *14.

### 2. Each Class Member Has Suffered Predictably Small Damages

As of the date of the Complaint, Plaintiff's damages were approximately $263.19. Comp. ¶36. This is well within the range of "predictably small" damages that California courts have held justify voiding an arbitration clause. Cohen v. DirecTV, Inc., 142 Cal. App. 4th 1442, 1452 (2d App. Dist. 2006) (damages that may or may not exceed $1,000 do not take class action waiver outside "a setting in which disputes between the contracting parties predictably involve small amounts of damages[.]") (quotation marks and ellipsis omitted); Brazil, 2007 U.S. Dist. LEXIS 59095, at *14.

ACS's argument that Plaintiff seeks damages large enough to justify an individual action (ACS Br. at 6) is the result of a distorted reading of the Complaint; ACS fails to note that Plaintiff alleges he will have to make an "enormous" lump sum payment at the end of the Repayment Period, *approximately twenty-seven years from now* on October 14, 2035. Comp. ¶29, ACS Br. at 5-6. As of December, 2007, $263.19 of Plaintiff's payments had been misallocated to interest instead of principal as a result of the Amortization Penalty. Comp. ¶36. Although Plaintiff's damages will likely increase over time, and, if left unremedied will indeed result in an enormous lump sum payment at a much later date,[5] Plaintiff's damages at the time of the Complaint were well within the range in which California courts have found unconscionability. Oestreicher v. Alienware Corp., 502

---

[5]    The fact that Plaintiff has brought this action, which seeks, among other things, injunctive relief against Defendants' deceptive practices, shows that Plaintiff does not intend to allow his damages to go unremedied and compound to the point where Plaintiff is required to make the tremendous payment discussed in the Complaint.

F. Supp. 2d 1061, 1068 (N.D. Cal. 2007) (plaintiff purchased a defective computer for $4,149.00);

Indep. Ass'n of Mailbox Center Owners, Inc. v. Superior Court, 133 Cal. App. 4th 396 (complaint

sought $470,000.00 in damages); Cohen, 142 Cal. App. 4th at 1452.

### 3. Defendants Carried Out a Scheme To Deliberately Cheat Large Numbers of Consumers

Here, the Complaint adequately alleges that the Defendants carried out a scheme to

deliberately cheat large numbers of consumers out of small sums of money. Cohen, 142 Cal. App.

4th at 1453. The Complaint contains four counts—fraud, breach of contract, and claims pursuant to

Cal. Bus. & Prof. Code §§ 17200 and 17500.

The Complaint centers on the Amortization Penalty, and alleges that Defendants deliberately

failed to disclose that Plaintiff and the Class were being penalized for making loan payments in a

timely manner. The contour of the scheme, as alleged in the Complaint, is as follows:

- The Note constitutes the entire understanding between Plaintiff and EFP (Comp. ¶25);
- The Note does not make the Amortization Penalty a term of the "entire understanding" between Plaintiff and EFP (Comp. ¶¶31, 33);

- Defendants are aware that the Amortization Penalty is not disclosed to prospective borrowers and, as sophisticated lenders, know that borrowers will be harmed by the application of the Amortization Penalty (Comp. ¶38);

- Defendants continue to apply the Amortization Penalty (Comp. ¶31), which will prevent Plaintiff and the Class from paying off their student loans (Comp. ¶34);

- As of the date of the Complaint, Plaintiff had been harmed by approximately $236.19 (Comp. ¶36);

- The Amortization Penalty was part of a scheme to defraud Plaintiff and the Class (¶37);

- EFP intentionally inserted the arbitration clause and class action waiver into the Note in order to exculpate itself from liability for its fraudulent and deceptive practices (Comp. ¶¶40, 42);

- The class action waiver is one-sided because it requires both Plaintiff and EFP to give up the right to a class action, when it is highly unlikely that EFP would seek to bring a class action against Plaintiff (¶42); and

- Defendants intentionally failed to disclose the Amortization Penalty to Plaintiff and the Class, thus cheating Plaintiff and the Class out of predictably small amounts of money that may not justify bringing individual actions against Defendants. Comp. ¶43.

Moreover, the class action waiver and arbitration clause in the Note is oppressive and one-sided, requiring Plaintiff and the Class to give up valuable rights to collective action and a trial by jury, and requiring EFP to give up nothing.

The class action waiver states that neither Plaintiff, nor EFP, nor any other person may pursue a claim in any litigation, "whether as a class action, private attorney general action, other representative action or otherwise." Lenci Decl. Exh. C. Waivers of this sort have been repeatedly rejected by the courts of California as substantively unconscionable. For example, in <u>Szetela</u>, the court held that the "manifest one-sidedness of the no class action provision at issue is blindingly obvious. . . . Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact [defendant], because credit card companies typically do not sue their customers in class action lawsuits." <u>Szetela</u>, 97 Cal. App. 4th at 1100-01.

Notably, ACS makes no argument as to the substantive unconscionability of the arbitration clause in the Note. Rather, left with no legal support under the FAA, and ignoring applicable California law that would further undermine its position, ACS seeks to introduce facts regarding Plaintiff that would somehow show that the class action waiver is not procedurally unconscionable. ACS argues that Plaintiff is an attorney who was not forced to enter into the Note, was merely a professional looking to save money on his loan payments, and that Plaintiff had available to him

sufficient market alternatives such that the Note was not presented to him on a "take it or leave it" basis. ACS Br. at. 8.

ACS's arguments are wholly improper at this time, and require weighing of evidence regarding Plaintiff's sophistication, damages and state of mind that are properly put before a jury.

However, if the Court chooses to address ACS's argument, Plaintiff submits that these facts are of no legal consequence under California law. California courts have rejected attempts by defendants to defeat unconscionability due to the sophistication of a plaintiff. Nagrampa, 469 F.3d at 1283 ("the sophistication of a party, alone, cannot defeat a procedural unconscionability claim"); Brazil, 2007 U.S. Dist. LEXIS 59095, at *17 (rejecting defendant's argument that Discover Bank applies only to consumer contracts, and holding that contract was procedurally unconscionable where plaintiff bought his computer for his business); Indep. Ass'n of Mailbox Center Owners, 133 Cal. App. 4th 396 (invalidating class action waiver in franchise contract).[6]

Moreover, sophistication plays no role whatsoever in this action: no degree of sophistication would have allowed Plaintiff to know of the existence of, or negotiate with respect to, the *undisclosed* Amortization Penalty.

ACS also argues that "if Plaintiff did not like the terms of the note, he could have refused to enter into it" and could continue to pay the terms of his other loan obligations. ACS Br. at 8.[7] This argument is unavailing because the "California Court of Appeal has rejected the notion that the availability in the market place of substitute employment, goods, or services *alone* can defeat a claim

---

[6]    ACS argues that "Plaintiff was not a struggling student" at the time he entered into the Note. ACS Br. at 8. At the time Plaintiff entered the Note, his gross monthly income was $4,583.00. Lenci Decl. Exh. B. His monthly payments on the loan were $440.74. Thus, Plaintiff's monthly payments amounted to nearly ten percent of his gross income. Plaintiff cannot be faulted for trying to save money on his monthly payments.

[7]    By this argument, ACS apparently concedes that the Note is a "take it or leave it" contract of adhesion.

of procedural unconscionability." Nagrampa, 469 F.3d at 1283; see also Szetela, 97 Cal. App. 4th at 1100.

### D.    ACS Does Not Have Standing to Compel Arbitration

ACS seeks to compel arbitration under 9 U.S.C. §4. Notably, however, ACS admits that it is not a party to the arbitration agreement with plaintiff. ACS Br. at 3, n.2  Therefore, ACS does not have standing to enforce an arbitration clause between plaintiff and EFP. Nevertheless, ACS argues that plaintiff's claim must be arbitrated under the doctrine of estoppel.

Pursuant to the "alternative estoppel theory", a signatory may be estopped from avoiding arbitration "with a non-signatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estoped party has signed." Am. Medical Ass'n v. United Healthcare Corp., 00 Civ. 2800 (LMM) (GWG), 2003 U.S. Dist. LEXIS 14686, at *9 (S.D.N.Y. Aug. 22, 2003) (citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995) and Choctaw Generation Ltd. P'Ship v. Am. Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001)). To determine whether the signatory's claims are intertwined with the underlying agreement, the Court needs to analyze two factors: (1) whether the signatory's claims arise under the "subject matter" of the underlying agreement; and (2) whether there is a "close relationship" between the signatory and the non-signatory. Am. Medical Ass'n, 2003 U.S. Dist. LEXIS 14686 at *9 (citing Chase Mortgage Company-West v. Bankers Trust Co., No. 00 Civ. 8150, 2001 U.S. Dist. LEXIS 6683, at *6 (S.D.N.Y. May 23, 2001).

Here, ACS' ability to satisfy the first factor of the "alternative estoppel theory" (whether the claims arise under the same "subject matter") is suspect and not as simple as ACS suggests. The "subject matter" of the claims at hand differ depending on the defendants because their roles varied. For instance, EFP solicited and entered into a written agreement with plaintiff. On the other hand,

ACS neither solicited plaintiff nor entered into a contract with him. Rather, ACS serviced and administered the loan, while EFP did not. Accordingly, the "subject matter" of the claims against EFP and ACS vary because each played a distinct role in the dispute and each committed different harms against the putative class.

It is clearer that ACS cannot satisfy the second factor of the "alternative estoppel theory" (whether there is a close relationship exists between ACS and plaintiff) because there is no relationship between plaintiff and ACS, let alone a "close" one. There is no contract between ACS and plaintiff. Plaintiff was not even aware that ACS was servicing his loans until after-the-fact. Kurtz Decl. Exh. A. Plaintiff neither chose nor accepted ACS as the servicer of his loans and, most importantly, never indicated his willingness to arbitrate claims against ACS. Accordingly, ACS's motion to compel arbitration should be denied because there is no "close relationship" between ACS and Plaintiff. See Am. Medical Ass'n, 2003 U.S. Dist. LEXIS 14686 at *9 (defendants' motion to compel arbitration should be denied because there is no relationship between the signatory plaintiffs and nonsignatory defendants, let alone a "close" one.)

ACS' argument that Plaintiff should be compelled to arbitrate by estoppel is wholly deficient and is merely a distraction from the true issue here of whether the arbitration clause in the Note is unconscionable. Tellingly, ACS has submitted no legal authority in which a Plaintiff was required to arbitrate by estoppel where that plaintiff alleged that an arbitration clause was unconscionable under California law, as is the case here. Lenci Decl. Exh. B; JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163 (2d Cir. 2004) (federal antitrust claims and Connecticut consumer protection laws); In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 390-91 (S.D.N.Y. 2003) (Sherman Act and Truth In Lending Act); In re Currency Conversion Fee Antitrust Litig., MDL No. 1409, 2005 U.S. Dist. LEXIS 21084 (S.D.N.Y. Sept. 27, 2005) (Sherman Act; court denied defendant's

motion to compel arbitration due to a "genuine issue of fact concerning the validity" of the arbitration clause). Accordingly, the analyses of the validity of the arbitration clauses in ACS's chosen authority is irrelevant to the analysis herein. ACS's estoppel argument puts the cart before the horse: it fails to recognize that questions of the validity of an arbitration clause must be decided first. Cap Gemini Ernst & Young, 346 F.3d 365.

## IV.    CONCLUSION

Accordingly, Plaintiff respectfully requests that ACS's motion should be denied in its entirety. The arbitration clause at issue is unenforceable as a matter of law.

Dated: New York, New York
         July 21, 2008

Respectfully submitted,

ABBEY SPANIER RODD
  & ABRAMS, LLP

By
Karin E. Fisch (KF 1082)
kfisch@abbeyspanier.com
Orin Kurtz (OK 7334)
okurtz@abbeyspanier.com
212 East 39th Street
New York, New York 10016
212.889.3700

MCLAUGHLIN & STERN, LLP
Alan E. Sash (AS 8804)
asash@mclaughlinstern.com
260 Madison Avenue
New York, New York 10016
212.448.1100

*Attorneys for Plaintiff*