UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA G. FENSTERSTOCK, An Individual,
On His Own Behalf And On Behalf Of
All Similarly Situated,

                       Plaintiff,

        -against-

EDUCATION FINANCE PARTNERS, A
California Corporation, and AFFILIATED
COMPUTER SERVICES, INC., A Delaware
Corporation,

                       Defendants.

Case No. 08 Civ. 3622 (TPG)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT AFFILIATED COMPUTER SERVICES, INC.'S
<u>MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS</u>**

31029103v5 68079

**Preliminary Statement**

Defendant Affiliated Computer Services, Inc. ("ACS"), by its attorneys, Hinshaw & Culbertson LLP, respectfully submits this Reply Memorandum of Law in response to Plaintiff's Memorandum of Law in Opposition to Defendant ACS's Motion to Compel Arbitration and Stay Proceedings in This Case ("Opp. Mem.").

**Reply Factual Statement**

Though it is undeniably his burden to show that his arbitration agreement and class-action waiver are unconscionable, Fensterstock either expressly or implicitly admits the facts that establish that neither is unconscionable.

First, he does not dispute the evidence that shows that, at the time he signed the Promissory Note (the "Note"), he had both business and law degrees, was admitted to the New York State bar, and had been practicing law in New York City for two years in the following relevant areas: "represent[ing] lenders at the closings of purchases of residential and commercial properties" as well as "[d]evelopment and construction financing [and] diverse financing transactions including bridge loans, revolving credit facilities, sale-leasebacks, and leasehold mortgage loans." Exhibit D, Declaration of Edward K. Lenci, dated June 5, 2008.

Second, Fensterstock does not dispute that he could have refused to enter the Note if he was dissatisfied with its terms, and he does not dispute that there were other consolidation loans available.

Third, Fensterstock's explanation of his alleged damages shows that they amount to at least $6,300.[1] Indeed, they may be significantly greater, as his own allegations

---

[1] ACS has arrived at this amount by extrapolating, over the thirty-year period of his loan, Fensterstock's alleged damages of $263.19 during the fifteen month period October 2006 to December 2007. Opp. Mem. at pp. 4-5.

1

31029103v5 68079

suggest. Complaint, at ¶¶ 3, 34, and 36; Opp. Mem. at pp. 2-3. As ACS will explain below, $6,300 is not so small an amount such that enforcement of the class-action waiver would be tantamount to exempting defendants from their alleged responsibility.

Finally, Fensterstock's quotation of the choice of law provision shows that federal law and California law govern the terms of the Note. Opp. Mem. at p. 3.

## REPLY LEGAL ARGUMENT

### POINT I

### THE COURT SHOULD ORDER THAT ARBITRATION BE HELD IN ACCORDANCE WITH THE TERMS OF THE ARBITRATION CLAUSE, INCLUDING THE CLASS-ACTION WAIVER

Before addressing the arguments Fensterstock has raised or addressed, ACS makes the following three observations:

First, Fensterstock is an attorney with substantial experience in commercial and personal loans, and the Note's choice of law clause expressly provides for the application of federal law. Thus, it is telling that Fensterstock neither pleads a cause of action under the federal Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, nor discusses that statute in his opposition to ACS's motion. Fensterstock does not allege, for example, that the Note failed to conform with TILA or was otherwise incongruent with industry standards.

Second, a majority of courts have held that TILA does not preclude class-action waivers in arbitration. *Randolph v. Green Tree Financial Corp.-Alabama*, 244 F.3d 814, 819 (11th Cir.2001); *Johnson v. West Suburban Bank*, 225 F.3d 366, 370 (3d Cir. 2000) (citations omitted).

Third, to the extent Fensterstock suggests that, under California law, his arbitration agreement should be given closer scrutiny than is accorded other sorts of agreements, that argument must fail. *See Perry v. Thomas*, 482 U.S. 483, 493 n. 9 (1987) (arbitration agreements cannot be scrutinized more closely than other sorts of agreements); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004).

Turning then to Fensterstock's opposition arguments, after quoting some general legal principles, he argues at pp. 10-12 of the Opp. Mem. that the class-action waiver is procedurally unconscionable under California law.[2]  What he ignores is that one of the key authorities upon which he relies, the Ninth Circuit's decision in *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1283 (9th Cir. 2006), specifically distinguished the situation before it (involving a first-time franchisee who had no specialized training or education in the direct mail business) from that in *Dean Witter Reynolds v. Inc. v. Superior Court*, 211 Cal.App.3d 758, 771 (1st App. Dist. 1989), where the California Court of Appeal held that an attorney who specialized in the area of financial institutions and financial services contracts and who had meaningful alternatives in choosing a financial institution could not claim procedural unconscionability.

As noted earlier, Fensterstock has not disputed that when he entered the Note he was a lawyer whose practice involved sophisticated commercial and personal loan transactions.  Moreover, he does not dispute that he could have simply refused to enter

---

[2]Under California law, it is Fensterstock's burden to show that the class-action waiver is both procedurally and substantively unconscionable. *See Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 981 (9th Cir. 2007). *See also Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 99 (Cal. 2000) (unconscionability is comprised of both a procedural and substantive aspect and both must be present to invalidate a contractual term); *Higgins v. Superior Court*, 140 Cal.App.4th 1238, 1249 (2d App. Dist. 2006) (the party opposing the arbitration has the burden of proving unconscionability).  In this regard, the mere fact that the contract may be characterized as one of adhesion does not make the contract or its terms unconscionable. *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 817 (Cal. 1981); *Armendariz, supra.*

3

the loan if he was dissatisfied with its terms, nor does he dispute that there were other consolidation loans available. Thus, under *Nagrampa,* he cannot show procedural unconscionability under California law. *See also In Re Saigon Plaza Association, LLC,* Bankruptcy No. 07-40169 LT, 2007 WL 3357651 at *5 (Bankr. N.D. Cal. 2007) (sophisticated business debtor could not establish unconscionability); *Marin Storage & Trucking, Inc v. Benco Contracting & Engineering, Inc.,* 89 Cal.App.4th 1042, 1056 (1st App. Dist. 2001) (alternative sources rendered procedural unfairness of adhesive contract minimal); *Shadoan v. World Savings & Loan Assn.,* 219 Cal.App.3d 97, 103 (1st App. Dist. 1990) (unconscionability claim failed absent allegation that plaintiff lacked alternative sources); *Kurashige v. Indian Dunes, Inc.,* 200 Cal.App.3d 606, 614 (2d App. Dist. 1988) (same); *Parr v. Superior Court,* 139 Cal.App.3d 440, 444 (1st App. Dist. 1983) (same).[3]

As far as the amount of his damages, Fensterstock argues that each of the purported class members, himself included, have suffered "'predictably small damages' that certain California decisions suggest justify voiding an arbitration clause containing a class waiver provision." Opp. Mem. at pp. 11-12. But the amounts that typically lead to findings of unconscionability range in the hundreds of dollars, or perhaps a little more than a thousand, as the cases Fensterstock cites suggest. Opp. Mem. at p. 11.[4] Here, however, Fensterstock's alleged damages are not in the hundreds of dollars, or even a

---

[3] Fensterstock's quotation of the *Nagrampa* decision later in his Opp. Mem. bears this out. At pp. 14-15 of the Opp. Mem., he quotes statements that market alternatives standing alone or the sophistication of a party standing alone cannot defeat procedural unconscionability. However, the Ninth Circuit's decision shows that, when these two factors are present *together*, procedural unconscionability cannot be established. *Nagrampa,* 469 F.3d at 1283.

[4] The discussion of California caselaw in *Ostreicher v. Alienware Corporation,* 502 F. Supp.2d 1061, 1067-68 (N.D. Cal. 2007), suggests that the typical high-end range of damages that would justify a finding that the damages are too small to justify an individual's pursuing a claim on his or her own is probably no greater than $1,200. Accordingly, the court's finding that $4,000 would satisfy such a finding is exceptional. But even so, Fensterstock's alleged damages of at least $6,300 are over 50% greater than those before the court in *Ostreicher.*

couple of thousand, but are at least $6,300, if not significantly more, and such alleged damages simply do not fit the legal requirement. *McCabe v. Dell, Inc.*, No. CV-06-7811-RGK, 2007 WL 1434972 at *4 (C.D. Cal. 2007) ($700 in damages was too much to support a finding of unconscionability); *see also Cohen v. DirectTV, Inc.*, 142 Cal.App. 4th 1442, 1452 (2d App. Dist. 2006) ($10.99 monthly fee qualified as a small amount for purposes of calculating damages, and $1000 was estimated to be at the highest end of insignificant damages). Moreover, Fensterstock does not cite any authority for the proposition that the amount of damages for purposes of determining unconscionability *vel non* under California law is what a plaintiff has actually suffered as of the date the Complaint is filed, regardless of how much larger those damages will, as alleged in the Complaint, become as time progresses.

Indeed, Fensterstock has alleged that he will have to make "an enormous lump sum payment" and that he will have to pay a balloon payment of "thousands of dollars." (Complaint, at ¶¶ 3, 34, and 36), and he should not now be permitted to argue positions directly contrary to his Complaint. As an attorney, he knows the significance of alleging he has been damaged, and he may not now minimize what he has claimed as damages because it suits his opposition to ACS's motion.

Additionally, Fensterstock is himself a lawyer and can easily represent himself in seeking redress, so the issue of damages is actually irrelevant to his case. As suggested by one of the cases Fensterstock cites, *Cohen, supra*, Opp. Mem. at p. 11, it is the inability to obtain legal representation to handle a claim that is monetarily insignificant that has led California courts to find unconscionability where the alleged damages are small.

31029103v5 68079

Other than a recitation of legal standards (Opp. Mem. at p. 13), Fensterstock does not explain precisely how the arbitration clause is substantively unconscionable under California law, which is his burden. All he does is allege that ACS makes no argument with respect to substantive unconscionability.

As far as his argument that ACS somehow lacks "standing" (Opp. Mem. at pp. 15-16), ACS showed in its moving papers that it is well-established that it can compel arbitration with Fensterstock based on the theory of arbitration by estoppel. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177-78 (2d Cir. 2004)(reviewing Second Circuit authorities); *In re Currency Conversion Fee Anit-Trust Litig.*, 265 F.Supp.2d 385, 405 (S.D.N.Y. 2003); *In re Currency Conversion Fee Anit-Trust Litig.*, No. 04 Civ. 5723, 2005 WL 2364969 *4-6 (S.D.N.Y. 2005).

In an effort to deny this right to ACS, Fensterstock first argues that ACS and EFP did not act in concert (Opp. Mem. at pp. 15-16), but that is contrary to what he alleges in the Complaint and in the Opp. Mem., at pp. 12-13, where he asserts they acted in close concert. As already stated above, attorney Fensterstock may not bring serious charges in his Complaint and then seek to ignore those charges for purposes of opposing ACS's motion. Accordingly, the Court should deem the allegations of his Complaint to establish the first prong of the estoppel test. *See also JLM Indus., Inc.*, 387 F.3d at 177-78 and the cases cited therein (the allegations of a pleading are sufficient).

Fensterstock also confuses the working of the second prong of the estoppel theory test (Opp. Mem. at p. 16), which requires a showing that there is a close relationship between EFP and ACS, not that there is a close relationship between ACS and Fensterstock. *Id.* and the cases cited therein.

Finally, he argues that *JLM Industries* and the two *Currency Conversion Fee Anit-Trust Litigation* cases do not involve California law but, as shown above, even assuming, *arguendo,* that California law alone applies (which it does not), Fensterstock has not met his burden to show unconscionability under it.

## **CONCLUSION**

Plaintiff simply has not met his burden to demonstrate the unconscionability of either his arbitration agreement or his class-action waiver. However, to the extent there are any doubts as to these issues (which ACS submits there are not), federal law nonetheless requires enforcement of the arbitration clause, including its class-action waiver, because of the presumption that arbitration agreements are valid, irrevocable and enforceable and the principle that all doubts must be resolved in favor of arbitration. Accordingly, ACS respectfully requests that this Court enter an Order: (a) compelling Fensterstock to arbitrate his claims against ACS in accordance with the terms of the arbitration provisions of the Note, including the class-action waiver; (b) staying these proceedings pending the completion of such arbitration; and (c) preserving all of ACS's rights and defenses pending the completion of arbitration, including tolling any applicable time limitations for answering or otherwise responding to the Complaint.

Dated: New York, New York
August 4, 2008

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: /s/ Edward K. Lenci
Edward K. Lenci (EL 3207)
Concepcion A. Montoya (CM 7147)
780 Third Avenue, 4th Floor
New York, New York 10017
(212) 471-6200
Attorneys for Affiliated Computer Services, Inc.