<u>*ELECTRONICALLY FILED*</u>

Karin E. Fisch
Orin Kurtz
Abbey Spanier Rodd & Abrams, LLP
212 East 39th Street
New York, New York 10016
212.889.3700

Alan E. Sash
McLaughlin & Stern, LLP
260 Madison Avenue
New York, New York 10016
212.448.1100

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JOSHUA G. FENSTERSTOCK, an individual,          Case No. 08 Civ. 3622 (TPG)
on his own behalf and on behalf of all
similarly situated,

                        Plaintiff,

        -against-

AFFILIATED COMPUTER SERVICES, INC.,
a Delaware Corporation,

                        Defendant.
--------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT AFFILIATED COMPUTER SERVICES, INC.'S MOTION TO
<u>COMPEL ARBITRATION AND STAY PROCEEDINGS IN THIS CASE</u>**

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   STATEMENT OF FACTS ............................................................................. 3

III.  PROCEDURAL HISTORY ........................................................................... 7

IV.   ARGUMENT .............................................................................................. 8

     A.   Legal Standards ................................................................................. 8

     B.   ACS Does Not Have Standing to Compel Arbitration ........................... 9

          1.   Plaintiff had No Relationship With ACS Upon Entering the Note ........... 9

          2.   The Arms' Length Contractual Relationship Between ACS and EFP Does not Permit ACS to Compel Arbitration ................................... 11

          3.   The Claims Against ACS Do Not Depend on the Existence of the Note . 14

     C.   The Arbitration Clause and Class Action Waiver are Unconscionable ............... 15

V.    CONCLUSION ............................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*A & M Produce Co. v. FMC Corp.*,
   135 Cal. App. 3d 473, 186 Cal. Rptr. 114 (1982)................................... 17

*Abramson v. Juniper Networks, Inc.*,
   115 Cal. App. 4th 638, 9 cal. Rptr. 3d 422 (2004).................................. 17

*Affiliated Computer Servs. v. Fensterstock ("Fensterstock III")*,
   180 L. Ed. 2d 818 (U.S. 2011).......................................................... 7

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83, 6 P.3d 669 (2000).................................................... 17

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. ___, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)............................... *passim*

*Butto v. Collecto Inc.*,
   No. 10-cv-2906 (ADS)(AKT), 2011 U.S. Dist. LEXIS 90218 (E.D.N.Y.
   Aug. 15, 2011) ..................................................................... 8, 12, 13

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*,
   346 F.3d 360 (2d Cir. 2003)........................................................... 16

*Choctaw Generation Ltd. Partnership v. American Home Assurance Co.*,
   271 F.3d 403 (2d Cir. 2001)........................................................... 14

*Cmty. State Bank v. Strong*,
   No. 06-11582, 2011 U.S.  App. LEXIS 17767 (11th Cir. Aug. 25, 2011) .............. 16

*Denney v. Jenkens & Gilchrist*,
   412 F. Supp. 2d 293 (S.D.N.Y. 2005).................................................. 2, 8

*Discover Bank v. Superior Court*,
   36 Cal. 4th 148 (Cal. 2005)....................................................... 7, 16, 19

*Doctor's Assocs., Inc. v. Casarotto*,
   517 U.S. 681 (1996).................................................................. 16

*Fensterstock v. Educ, Fin. Partners*,
   618 F. Supp. 2d 276 (S.D.N.Y. 2009)................................................... 7

*Fensterstock v. Educ. Fin. Partners*,
   611 F.3d 124 (2d Cir. 2010)........................................................... 7

*Fensterstock v. Educ. Fin. Partners*,
  No. 09-1562-CV, 2011 U.S. App. LEXIS 13439 (2d Cir. June 30, 2011) .......................... 7, 16

*Flores v. Transamerica HomeFirst, Inc.*,
  93 Cal. App. 4th 846, 113 Cal. Rptr. 2d 376 (2001) ......................................................... 17, 18

*In re Checking Account Overdraft Litig.*,
  No. 09-MD-2036-JLK (S.D. Fla. Sept. 1, 2011) .............................................................. 3, 15, 17

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
  370 F. Supp. 2d 1135 (D. Kan. 2005) .................................................................................. 21

*Jaramillo v. JH Real Estate Partners, Inc.*,
  111 Cal App 4th 394, 3 Cal Rptr 3d 525 (2003) ................................................................... 19

*JLM Industries, Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) ................................................................................................. 13

*Little v. Auto Stiegler, Inc.*,
  29 Cal. 4th 1064, 63 P.3d 979 (2003) ................................................................................... 18

*Lucy v. Bay Area Credit, SVC, LLC*,
  No. 3:10-CV-1024 (JCH), 2011 U.S Dist. LEXIS 55088 (D. Conn. May 23, 2011) .............. 13

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ............................................................................................... 17

*Ragone v. Atlantic Video*,
  595 F.3d 115 (2d Cir. 2010) ................................................................................... 2, 9, 10, 13

*Rivera v. Am. Gen. Fin. Servs., Inc.*,
  2011 NMSC 33, 16, *2011 N.M. LEXIS 379* (N.M. July 27, 2011) ......................................... 16

*Ross v. Am. Express Co.*,
  547 F.3d 137 (2d Cir. 2008) ............................................................................................ *passim*

**Statutes**

Federal Arbitration Act ...................................................................................................... *passim*

**Rules**

Cal. Civ. Code § 1670.5(a) ...................................................................................................... 18

Plaintiff Joshua G. Fensterstock ("Plaintiff") respectfully submits this memorandum of law in opposition to defendant Affiliated Computer Systems, Inc.'s ("ACS") most recent memorandum of law seeking to compel arbitration of this Action.

## I.      PRELIMINARY STATEMENT

This is a nationwide class action arising from the fraudulent and deceptive practices of ACS in connection with Plaintiff's private consolidation loans.  ACS systematically applied a hidden penalty (the "Amortization Penalty") to the loans of Plaintiff and the Class, thus allowing ACS to apply Plaintiff's payments wholly to interest rather than to principal as dictated by the applicable amortization schedule.

ACS has applied the Amortization Penalty to Plaintiff's loan despite the fact that Plaintiff has made timely payments on his loan and has never been declared in default.  ACS ultimately disclosed the existence of the Amortization Penalty to Plaintiff only after Plaintiff inquired about the allocation of his loan payments between principal and interest.

ACS seeks to compel arbitration despite the fact that ACS is not a party to Plaintiff's Loan and Promissory Note (the "Note"), and is nowhere mentioned in the Note.  Plaintiff never agreed to arbitrate with ACS, and the Note is expressly between Education Finance Partners ("EFP") and any subsequent holder of legal title to the Note (a "Holder").  Declaration of Jamie Broedel ("Broedel Decl.") Exhs. A, B at 1.  ACS has admitted that it is not a holder of the Note. Declaration of Joshua G. Fensterstock ("Fensterstock Decl.") Exhibit B.  Yet, ACS seeks to compel Plaintiff to arbitrate based upon an arbitration clause and class action waiver (the "Arbitration Clause") found in the Note.

The main thrust of ACS's argument is that Plaintiff should be estopped from avoiding arbitration.  ACS's argument fails.  In order for a non-signatory to compel arbitration, the non-

signatory bears the burden of showing that "(i) there is a close relationship between the parties and controversies involved *and* (ii) the signatory's claims against the non-signatory are intimately founded in and intertwined with the underlying agreement containing the arbitration clause." *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 297 (S.D.N.Y. 2005) (citations omitted; emphasis added).

Here, ACS utterly fails to show the requisite close relationship between any of the parties. Plaintiff and ACS had *no* relationship whatsoever at the time Plaintiff entered into the Note. Plaintiff had never heard of ACS at the time he entered into the Note (Fensterstock Decl. ¶4), and ACS admits that Plaintiff did not learn of its existence until after the Note when ACS notified Plaintiff that it would act as the "servicer" of Plaintiff's loans. Broedel Decl. Exh. D; ACS Br. at 8. This relationship is insufficient under ACS's chosen authority, *Ragone v. Atlantic Video*, 595 F.3d 115, 127 (2d Cir. 2010), which looked at the relationship of the plaintiff and the non-signatory at the time of contracting, not after, as ACS does here.

Moreover, the Second Circuit's

[C]ases which have applied estoppel against a party seeking to avoid arbitration have tended to share a common feature in that the non-signatory party asserting estoppel [in this case, ACS] has had some sort of corporate relationship to a signatory party; that is, this Court has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities.

*Ross v. Am. Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008). Here, ACS and EFP have no such relationship: the only legal relationship between ACS and EFP was an arms' length contract between EFP and ACS.

Additionally, ACS appears to overestimate the breadth of the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011), and has not even addressed the Complaint's unconscionability allegations on this round of

2

briefing.[1]   However, "*Concepcion* did not completely do away with unconscionability as a defense to the enforcement of arbitration agreements under the FAA."  *In re Checking Account Overdraft Litig.*, No. 09-MD-2036-JLK, slip op. at 8 (S.D. Fla. Sept. 1, 2011); Declaration of Orin Kurtz ("Kurtz Decl.") Exhibit A.  For the reasons herein, the Arbitration Clause remains both procedurally and substantively unconscionable under California law (the chosen law of the Note) and thus, regardless of whether Plaintiff should be estopped from avoiding arbitration, the Arbitration Clause should be stricken as unconscionable.

## II.   <u>STATEMENT OF FACTS</u>

In or about June 2006, Plaintiff received a solicitation from EFP regarding private consolidation loans.  Comp. ¶26.  The solication made no reference to EFP.  Fensterstock Decl. ¶2.  On or about August 8, 2006, Plaintiff executed a Loan and Promissory Note (the "Note") for a consolidation loan from EFP.  Comp. ¶25.[2]  ACS was not a party to the Note; on August 29, 2006, ACS notified Plaintiff that ACS "provides a Student Loan Billing Service to [EFP]," and would be "working with" EFP and Plaintiff as Plaintiff repays his loan.  Broedel Decl. Exh. D.

The Note stated that the terms contained therein constitute the entire agreement between EFP and Plaintiff with respect to Plaintiff's loan, and there are no other written or oral agreements or understandings between them.  Comp. ¶25.  The parties to the Note are specifically identified as Plaintiff, EFP, and any subsequent Holder of legal title to the Note.  Broedel Decl. Exhs. A, B at 1.

Pursuant to the Note, Plaintiff received a consolidation loan in the amount of $52,915.49 with a fixed interest rate of 9.32%.  Comp. ¶27.  Over the nearly thirty year repayment period

---

[1]   The "Complaint" refers to Plaintiff's Class Action Complaint and Jury Trial Demand, filed on April 15, 2005.

[2]   As used herein, "Comp. ¶__" refers to the Complaint.

(the "Repayment Period") of the loan, Plaintiff would be required to make 348 monthly payments of $440.74, for a total of approximately $153,377.52, with one final payment of $361.92 to be made in the year 2035.  Comp. ¶29.  At the time Plaintiff entered into the Note, Plaintiff's gross monthly income was $4,583.00.  Broedel Decl. Exh. A at 2.  Thus, Plaintiff's monthly payments amounted to nearly ten percent of his gross income.

At the time Plaintiff entered into the Note, he had no knowledge of ACS's existence. Fensterstock Decl. ¶4.  However, in August, 2006, ACS sent Plaintiff a notice that informed him that ACS would be the servicer of his loan.  Broeder Decl. Exh. D.  Despite ACS' contention that Plaintiff never questioned ACS' relationship with EFP, on August 27, 2007, Plaintiff specifically communicated to ACS that he wished to see the legal documentation governing ACS's relationship with EFP, and further questioned whether ACS was a legal Holder of the Note; acknowledged that it is not a legal Holder of the Note.  Fensterstock Decl. Exhs. A, B.[3]

Beginning on October 14, 2006, and through the present, Plaintiff has made timely payments on his loan and has not been charged any late fee nor declared in default under the terms of the Note.  Comp. ¶30.

The Complaint alleges that despite Plaintiff's timely payments "Defendants" imposed a hidden penalty (the "Amortization Penalty") on Plaintiff that was not a part of the Note, and at no time was disclosed to Plaintiff before Plaintiff signed the Note (Comp. ¶31); however,  the evidence appears to show that *ACS alone* applies the Amortization Penalty.  Broedel Decl. Exh. C at 17 (ACS agrees to perform "Payment Processing," "Interest Capitalization," and "Payment Reapplication" functions).

---

[3]   ACS's apparent failure to locate this document raises questions as to the sufficiency of ACS's document retention.

Only after Plaintiff contacted ACS, did ACS disclose to Plaintiff the substance of the Amortization Penalty.  In a letter to Plaintiff, ACS stated:

> The amounts listed [in the Amortization Schedule previously sent to Plaintiff] are based upon your payment amount of $440.74 being received on the 14th of each month.  Any changes in the date we receive each month's payment . . . may change the amounts that are applied to interest and principle [sic].  *This is in accordance with your promissory note.* Comp. ¶33 (emphasis added).

Thus, as Plaintiff understands, ACS applies the Amortization Penalty even for timely payments that are received early, *before* the 14th of each month.  Comp. ¶37.

The Amortization Penalty was not disclosed to Plaintiff before this letter, and was not a part of the Note.  Comp. ¶33; *see* Broedel Decl. Exh. B (showing that the Amortization Penalty is not a part of the Note).  Pursuant to the Amortization Penalty, ACS applied almost none of Plaintiff's payments to the outstanding principal of his loan, and instead applied Plaintiff's payments to interest.

Thus, of $7051.84 Plaintiff paid to ACS between October 2006 and December 2007, only $213.39 was applied to principal.  The amortization schedule on which the Note was based states that $476.58 should have been applied to principal.  Comp. ¶32.  As of the date of the Complaint, therefore, Plaintiff had been harmed in the approximate amount of $263.19.  Comp. ¶36.

As a result of the Amortization Penalty, Plaintiff will never be able to pay off his loan in accordance with the schedule upon which his Note was based, and will be forced to make a large balloon payment at the end of the Repayment Period, in the year 2035, if ACS continues to apply the Amortization Penalty.  Comp. ¶34.  In order to cease the accrual of further damages and avoid having to make this large payment, Plaintiff included a request for an injunction in the Complaint.

Plaintiff's Note contains an extensive arbitration clause. Among other things, the arbitration clause includes a class action waiver that states, "[c]laims made as part of a class action or other representative action [are subject to arbitration], and the arbitration of such Claims must proceed on an individual (non-class, non-representative) basis." Comp. ¶39.

The arbitration clause chooses California law (Comp. ¶26) and has a clause that prevents Plaintiff from selecting a forum of his choice: "The party filing arbitration *must* chose one of the following two admistrators []: National Arbitration Forum; or American Arbitration Association." Broeder Decl. Exhs. A, B, at 4.

The Note contains all of Plaintiff's agreements in this matter, and is between Plaintiff, EFP and legal Holders of title to the Note. ACS was not a party to the Note or any other agreement between Plaintiff and EFP. Broedel Decl. Exhs. A, B. No arbitration agreement exists between Plaintiff and ACS. *Id.*

EFP and ACS are not in any way related or affiliated with one another except through the arms-length, November 15, 2004 Private Loan Servicing Agreement, as amended from time to time, which is attached as Exhibit C to the Broeder Declaration. That contract states that "EFP desires ACS to assist it in managing certain of its Subject Loan Programs[.]" Broedel Decl. Exh. C at 2. The contract also states that "ACS agrees to act as EFP's non-exclusive agent in connection with the origination of loans funded by EFP[.]" *Id.* The contract specifically contemplates that the parties may bring legal actions against one another in connection with ACS's servicing of the subject loans (Broeder Decl. Exh. C at 9, "Waiver of Jury Trial"), and has a forum selection clause that permits ACS and EFP to have their disputes heard in a California court under California law. *Id.* at 10.

III.   **PROCEDURAL HISTORY**

Plaintiff filed the Complaint on April 15, 2008.  Dkt. No. 1.  On March 24, 2009, the Court denied ACS's motion to compel arbitration, holding that the Arbitration Clause was unconscionable under *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (Cal. 2005) and its progeny.  *Fensterstock v. Educ, Fin. Partners ("Fensterstock I")*, 618 F. Supp. 2d 276 (S.D.N.Y. 2009).[4]   ACS appealed, and the Court's decision was affirmed by the Second Circuit. *Fensterstock v. Educ. Fin. Partners ("Fensterstock II"),* 611 F.3d 124 (2d Cir. 2010).  ACS's subsequent petition for rehearing *en banc* was denied, and ACS then petitioned the Supreme Court for *certiorari*.   On April 27, 2011, the Supreme Court vacated the Second Circuit's decision and remanded the case "for further consideration in light of *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)".  *Affiliated Computer Servs. v. Fensterstock ("Fensterstock III")*, 180 L. Ed. 2d 818 (U.S. 2011).[5]

The Second Circuit remanded the case to this Court, holding that

> Because the *Discover Bank* rationale is no longer viable, and because the district court in *Fensterstock I* likewise had not reached the merits of plaintiff's standing contention or ACS's defense to that contention, *see* 618 F. Supp. 2d at 280, we hereby REMAND this matter to the district court for initial consideration of those arbitrability issues, as well as any other issues that are not foreclosed by Fensterstock III.

*Fensterstock v. Educ. Fin. Partners ("Fensterstock IV")*, No. 09-1562-CV, 2011 U.S. App. LEXIS 13439, at *2-3 (2d Cir. June 30, 2011).

---

[4]    While ACS's motion was pending, EFP declared bankruptcy.  Dkt. No. 27.  EFP no longer exists.

[5]    In the *Concepcion* case, the Supreme Court held that the *Discover Bank* rule, which set out the test for determining whether a class action waiver is unconscionable under California law, was preempted by the Federal Arbitration Act (the "FAA") to the extent it stood as an obstacle to class arbitration.

IV.    **ARGUMENT**

A.    **Legal Standards**

"Because arbitration is a matter of contract, exceptional circumstances must apply before a court will allow a non-contracting party [such as ACS] to impose a contractual agreement to arbitrate." *Denney*, 412 F. Supp. 2d at 297 (citations and quotation marks omitted).

"Here, [ACS] faces the burden of showing that it may enforce the arbitration provisions set forth in [Plaintiff's Note], in spite of the fact that [ACS] is not a party" to the Note. *Butto v. Collecto Inc.*, No. 10-cv-2906 (ADS)(AKT), 2011 U.S. Dist. LEXIS 90218, at *5 (E.D.N.Y. Aug. 15, 2011).

Courts have held that

[A]rbitration is a matter of consent, not coercion. As such, a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit. Thus, while the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so. Consistent with these principles, *the party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate.*

*Id.* * 4-5 (emphasis added; citations, quotation marks and brackets omitted).

"A non-signatory may compel arbitration on an estoppel theory, where (i) there is a close relationship between the parties and controversies involved *and* (ii) the signatory's claims against the non-signatory are intimately founded in and intertwined with the underlying agreement containing the arbitration clause." *Denney*, 412 F. Supp. 2d at 297 (citations omitted; emphasis added).

ACS's cited authority shows that each of the above elements must be satisfied:

[Intertwined claims] does not mean, however, that whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them, that party will be estopped from refusing to arbitrate. . . . [I]n

addition to the "intertwined" factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.

*Ragone*, 595 F.3d at 127.

The Second Circuit has held that

[T]his Court's cases which have applied estoppel against a party seeking to avoid arbitration have tended to share a common feature in that the non-signatory party asserting estoppel has had some sort of corporate relationship to a signatory party; that is, this Court has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities.

*Ross*, 547 F.3d at 144.

The Second Circuit recently indicated that the relationship among the parties is to be evaluated at the time of contracting.  *Ragone*, 595 F.3d at 127 ("it is plain that *when Ragone was hired by AVI*, she understood ESPN to be, to a considerable extent, her co-employer") (emphasis added); *id.* at 128 (Ragone admits that she knew *from the date of her employment* by AVI that she would work with and be supervised by ESPN personnel) (emphasis added).

ACS has utterly failed to show that Plaintiff had *any* relationship with ACS at the time he entered into the Note; specifically, to the extent Plaintiff entered into a valid agreement to arbitrate, it was only with EFP and Holders of legal title to the Note.  Moreover, ACS and EFP had only an arms-length relationship established only by contract.  Thus, the parties in this Action do not have the close relationship required for estoppel under Second Circuit law.

**B.     ACS Does Not Have Standing to Compel Arbitration**

**1.     Plaintiff had No Relationship With ACS Upon Entering the Note**

Here, the Note is an agreement between Plaintiff, EFP and legal Holders of title to the Note, only.   Plaintiff had no knowledge of ACS at the time he entered into the Note

(Fensterstock Decl. ¶ 4) and the solicitation Plaintiff received from EFP did not mention ACS. Fensterstock Decl. ¶2.  ACS is nowhere mentioned in the Note between Plaintiff and EFP (ACS Br. at 8), and ACS admits that Plaintiff did not learn of its existence until August, 2006, after Plaintiff entered the Note, when he received a notification that ACS would "work with" Plaintiff as he repays his loan.  ACS Br. at 8; Broeder Decl. Exh. D.[6]  Thus, the relationship between Plaintiff and ACS at the time of contracting is insufficient to establish the close relationship required by the Second Circuit.  *Ross*, 547 F.3d at 144 (estoppel is applied "in cases involving subsidiaries, affiliates, agents, and other related business entities").

ACS relies heavily on *Ragone*, 595 F.3d 115, to argue that the Note need not mention ACS in order for ACS to compel arbitration.  ACS Br. at 7.  ACS gives an incomplete analysis of *Ragone*: in that case, the Second Circuit based its decision on the fact that the non-signatory was the plaintiff's *employer*, a fact of which the plaintiff was aware at the time she entered into the relevant agreement.  "[I]t is plain that when Ragone was hired by AVI [whom she was contracted to arbitrate with], she understood ESPN [who claimed that Ragone must arbitrate against it as well based upon principles of estoppel] to be, to a considerable extent, her co-employer." *Id.* at 127.

The court further noted that the plaintiff in *Ragone*:

> admits that she knew *from the date of her employment* by AVI that she would work with and be supervised by ESPN personnel in the ordinary course of her daily duties [with AVI].  This knowledge that she would extensively treat with ESPN personnel is sufficient to demonstrate the existence of a relationship between Ragone and ESPN that allows the latter to avail itself of the arbitration agreement between Ragone and AVI.

---

[6]   One would be hard-pressed to determine the relevant facts from reading ACS's brief because ACS has not bothered to recite them.

*Id.* at 128 (emphasis added).[7]

Here, Plaintiff was unaware of ACS at the time he entered into the Note with EFP, did not know that ACS would later be the servicer of his loan, and did not know that ACS and EFP had a non-exclusive, pre-existing, arms' length loan servicing agreement in place.  Plaintiff cannot be fairly estopped from arbitrating with a company that was a total stranger to him at the time he entered into the Note.

### 2.     The Arms' Length Contractual Relationship Between ACS and EFP Does not Permit ACS to Compel Arbitration

The Second Circuit has applied estoppel "in cases involving subsidiaries, affiliates, agents, and other related business entities." *Ross*, 547 F.3d at 144.  ACS and EFP have no such relationship.

The Origination and Servicing Agreement between EFP and ACS, which is the only evidence of any relationship between EFP and ACS, unequivocally shows that these companies were dealing at arms' length.  *First*, the contract indicates that the two companies are separate from one another, and that ACS was engaged to assist EFP in the servicing of loans.  *Second*, the contract contains a jury trial waiver and a forum selection/choice of law clause; certainly, a corporate parent would not include such provisions with its subsidiary or affiliate.  *Third*, the relationship between ACS and EFP is expressly non-exclusive; the contract states that "EFP shall not be restricted in any manner from conducting any of the services provided by ACS hereunder for its own account or from contracting with any other third person to do the same."  Broedel Decl. Exh. C at Section P.

---

[7]     ACS misleadingly states that Plaintiff learned of ACS "immediately after he entered the Note." ACS Br. at 8.  The facts show, however, that ACS sent its first statement to Plaintiff on or about August 29, 2006 (Broedel Decl. Exh. D), over three weeks after Plaintiff entered the Note on August 8, 2006. Broedel Decl. Exh. A.  This difference is material given *Ragone*'s examination of the parties' relationship at the time of contracting.

In a recent case similar to this Action, Judge Spatt of the Eastern District of New York held that a plaintiff was not estopped from avoiding arbitration where the plaintiff had sued a debt collector that worked for a cell phone company. *See Butto*, 2011 U.S Dist. LEXIS 90218. *Butto*, like this case, involved a putative class action against Collecto, a debt collector for AT&T Mobility and others. The plaintiffs in *Butto* had wireless service contracts with their cell phone providers that contained arbitration clauses. Collecto Inc. asked the trial court to compel arbitration based upon a theory of estoppel.

Although Collecto was not a party to the service agreements between plaintiffs and their service providers, Collecto claimed that it could compel arbitration because Collecto was pursuing debts that were related to the plaintiff's service contract. However, the plaintiff submitted the agreements between Collecto and the cell phone companies by which Collecto agreed to collect overdue debts for these entities. *Id.* At *12.

As a result of these contracts, Judge Spatt found that "…Collecto has not satisfied the [relationship] part of the test, and thus ultimately cannot enforce the arbitration agreement. That is, Collecto has not shown that there exists a relationship between it and either [of the wireless service providers] that is sufficiently close so as to justify estopping the plaintiffs from opposing arbitration." *Id.* at *10-11.[8]

The *Butto* court determined that there was "an insufficient *corporate* relationship between the signatory [AT&T] and non-signatory [Collecto]." *Id.* at *11. (emphasis in original)

---

[8]   In *Butto*, the contract between Collecto and the cell phone companies expressly disclaimed that Collecto was an agent of the cell phone companies. 2011 U.S. Dist. LEXIS 90218, at *12-13. Although ACS's contract with EFP does not have such a disclaimer, it is not necessary. Courts look at the substance of a contract, not formalistic labels. Here, the contract between ACS and EFP express provides that it is non-exclusive, and the fact that ACS and EFP have entered into a contract, alone, shows that they are not agents or affiliates of one another. Indeed, the court in *Butto* noted that Collecto was not an agent because its contract gave no indication that the cell phone companies exercised control over Collecto's day-to-day operations. *Id.* at *14. The same can be said for the contract between EFP and ACS.

Collecto failed to demonstrate that any of the signatories to the arbitration agreement "exercised control over Collecto's daily operations." *Id*. at *14.

In another recent case decided a few months before *Butto*, Judge Hall of the District of Connecticut came to the same conclusion as Judge Spatt. *Lucy v. Bay Area Credit, SVC, LLC*, No. 3:10-CV-1024 (JCH), 2011 U.S Dist. LEXIS 55088 (D. Conn. May 23, 2011). In *Lucy*, defendant Bay Area Credit was attempting to avail itself of an arbitration agreement between the plaintiff and a third-party by arguing estoppel.

The plaintiff in *Lucy*, like the Plaintiff here, opposed arbitrating with someone with whom it did not agree to arbitrate. Although the trial court found that the factual issues against Bay Area Credit were "intertwined" with the arbitration agreement, the court did not compel arbitration because "[c]ontractually speaking, the plaintiff[] does not know [Bay Area Credit] from Adam." *Id.* at *13 (citing *Ross*, 547 F.3d at 146). The court held that in order to grant the motion to compel arbitration under the principle of equitable estoppel "some relationship must exist between [plaintiff and the non-signatory] 'sufficient to demonstrate that the plaintiff intended to arbitrate this dispute with'" the non-signatory. *Id*. at * 18-19 (citing *Ross*, 547 f.3d at 146). Here, no such relationship or intention exists.[9]

ACS cites to *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004). However, that case does not apply here because the parties seeking to compel arbitration in *JLM* were corporate parents of the signatory entities. *Id*. at 177. Indeed, the court in *JLM* noted that the complaint "repeatedly alleges that, whatever corporate entities happened to sign the [charter

---

[9] Judge Hall in *Lucy* similarly distinguished *Ragone* holding that unlike the plaintiff in *Ragone* the plaintiff in *Lucy* "did not sign the Wireless Service Agreement with the understanding that her obligations to AT&T also ran to Bay Area Credit." *Lucy,* 2011 U.S Dist. LEXIS 55088, at *15-16, n.2.

contracts], [JLM] was purchasing shipping services *directly from the parents* and was harmed by the allegedly inflated prices charged by those parents." *Id.* at 178.

ACS also cites to *Choctaw Generation Ltd. Partnership v. American Home Assurance Co.*, 271 F.3d 403 (2d Cir. 2001). However, that case similarly does not apply here because the non-signatory in *Choctaw* was explicitly named therein as having certain tasks to perform under that contract. No such disclosure was made here in the agreement between EFP and Plaintiff. Rather, the agreement was expressly between Plaintiff, EFP and legal Holders of title to the Note, which ACS admits it is not. Fensterstock Decl. Exh. B.

Moreover, the court in *Choctaw* held that the "tight relatedness of the parties" estopped the plaintiff from avoiding arbitration. *Id.* at 406. No such "tight" relationship exists among any of the parties to this action.

### 3.    The Claims Against ACS Do Not Depend on the Existence of the Note

ACS argues that Plaintiff's claims are tied to, and depend upon, the existence of the Note. ACS Br. at 10. This argument is a red herring because, as Plaintiff has shown, the relationships between each of the parties are insufficient to work an estoppel on Plaintiff—Plaintiff and ACS had no relationship whatsoever at the time of the Note, and ACS and EFP had an arms' length contractual relationship.

Moreover, Plaintiff's claims do not depend upon the existence of the Note. The crux of Plaintiff's Complaint against ACS is that ACS is misallocating Plaintiff's money: ACS is applying the Amortization Penalty and it has no right to do so. Although the Note does indeed have some relevance, there are no terms in the Note concerning the Amortization Penalty, and there are no terms in the Note concerning the amortization schedule which ACS has blatantly disregarded. Comp. ¶32. The Complaint clearly differentiates between EFP and ACS, and

alleges that the application of the Amortization Penalty, as ACS has done apparently at its sole discretion, is a fraud.  None of these allegations require the existence of the Note. Comp. ¶3.

Plaintiff's Complaint, like any complaint, is a set of good faith allegations based upon a reasonable belief as to the occurrence of events.  To the extent the Complaint referred to ACS and EFP as being involved in a scheme together, the documents submitted to the Court by ACS appear to show the Amortization Penalty was applied solely by ACS.  Broedel Decl. Exh. C at 17.  Moreover, EFP, the drafter of the Note, no longer exists.  Thus, the idea that the defendants can be lumped together, as ACS argues, is no longer possible.  Estoppel is a doctrine of fairness. Just as it would be unfair for Plaintiff to avoid arbitration in certain circumstances, it would also be unfair for ACS to compel arbitration when ACS knows that it, and not EFP, is responsible for the Amortization Penalty.

**C.      The Arbitration Clause and Class Action Waiver are Unconscionable**

Perhaps overestimating the breadth of the Supreme Court's decision in *Concepcion*, 563 U.S. –, 131 S. Ct. 1740, ACS has failed to address the allegations in Plaintiff's complaint concerning the unconcsionability of the Arbitration Clause.

However, "*Concepcion* did not completely do away with unconscionability as a defense to the enforcement of arbitration agreements under the FAA."  *In re Checking Account Overdraft Litig.*, No. 09-MD-2036-JLK, slip op. at 8 (S.D. Fla. Sept. 1, 2011).  In the wake of *Concepcion*, many courts have recognized that "[t]he ability of . . . contractual defects to invalidate arbitration agreements ***is not affected*** by the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. --, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011), which preserved 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' so long as the defenses do not 'apply only to arbitration or  . . . derive their meaning from the fact that an agreement to

arbitrate is at issue.'" *Cmty. State Bank v. Strong*, No. 06-11582, 2011 U.S.  App. LEXIS 17767, at *66-67 n.28 (11th Cir. Aug. 25, 2011) (emphasis added) (quoting *Concepcion*, 563 U.S. --, 131 S. Ct. 1740, 1746; *see also Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011 NMSC 33, 16, 2011 N.M. LEXIS 379, at *12-13 (N.M. July 27, 2011).

Indeed, the Supreme Court in *Concepcion* expressly acknowledged that "[s]ection 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Concepcion*, 131 S. Ct. at 1744 (quoting 9 U.S.C. § 2).

Thus, as reaffirmed by *Concepcion*, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Concepcion*, 131 S. Ct. at 1755 (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  "Accordingly, while the FAA creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act, in evaluating whether the parties have entered into a valid arbitration agreement, the court must look to state law principles." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also Id*. at 365) ("It is clear that questions of contractual validity relating to the unconscionability of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA.").

Although *Discover Bank*'s public policy rationale for invalidating class action waivers and arbitration clauses is "no longer viable" (*Fensterstock IV*, 2011 U.S. App. LEXIS 13439, at *2), the Court can nonetheless find the arbitration clause and class action waiver unconscionable

based on generally applicable contract principles.  *See, e.g., In re Checking Account Overdraft Litig.*, No. 19-MD-2036-JLK (S.D. Fla. Sept. 1, 2011).

California courts analyze contract provisions for both procedural and substantive unconscionability.  *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114, 6 P.3d 669, 767 (2000). In California,

> [T]he prevailing view is that procedural unconscionability and substantive unconscionability need not both be present to the same degree: Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves.  In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (citations and quotation marks omitted).

The procedural unconscionability analysis focuses on "oppression" or "surprise."  *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853, 113 Cal. Rptr. 2d 376 (2001). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." Id. (citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486, 186 Cal. Rptr. 114, 121 (1982)).

An arbitration provision is substantively unconscionable if it is "'overly harsh' "or generates "'one-sided' results." *Armendariz*, 24 Cal. 4th at 114, 6 P.3d at 689 (quoting *A & M Produce*, 135 Cal. App. 3d at 486-87, 186 Cal. Rptr. At 122).   "[T]he paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657, 9 cal. Rptr. 3d 422, 436 (2004). California law requires an arbitration agreement to

have a "modicum of bilaterality," *see Armendariz*, 24 Cal. 4th at 117, 6 P.3d at 692, and

arbitration provisions that are "unfairly one-sided" are substantively unconscionable.  S*ee Little*

*v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071, 63 P.3d 979, 984 (2003).

Under California law, courts are instructed not to enforce unconscionable contracts, and

to limit the application of any unconscionable contract clause.  Cal. Civ. Code § 1670.5(a).

The arbitration clause in the Note is both procedurally and substantively unconscionable.

As for procedural unconscionability, the Complaint alleges that

> [T]he Notes have all the indicators of a classic "take it or leave it" contract of
> adhesion.  Defendants have superior bargaining power, as Defendants are
> established lending companies with hundreds of millions of dollars in cash and
> assets, while Plaintiff and the Class are graduating students who face years of
> paying off school loans in addition to uncertainties in the job market.[10]
> Defendants drafted the Notes, and Plaintiff and the Class had no meaningful
> choice with regard to the terms of the Notes.

Comp. ¶41.

This allegation satisfies the "oppression" aspect of procedural unconscionability. *Flores*,

93 Cal. App. 4th at 853, 113 Cal. Rptr. 2d at 381.

With regard to substantive unconscionability, the Note fails in all respects to have

mutuality, and also chooses two forums—the National Arbitration Forum and the American

Arbitration Association—which have been decried by authorities as being in the pockets of big

business.

First, the class action waiver prohibits both Plaintiff and ACS from bringing class

actions, when, in reality, ACS is highly unlikely to bring a class action suit against Plaintiff: "If

---

[10]   ACS previously made light of the statement that "Plaintiff and the Class are graduating students[.]"
Dkt. No. 10 at 1, n.1.  To be clear, Plaintiff graduated law school three years before entering into the
Note, and at the time of the Note was earning approximately $55,000 per year. This statement referred to
Plaintiff "and the Class," many of whom were indeed graduating at the time they entered into their Notes.

you [ACS] or I [Plaintiff] require arbitration of a particular Claim, neither you, me, nor any other person may pursue the Claim…as a class action[.]"  Broedel Decl. Exhs. A, B at 4.

Courts have recognized that such a false mutual waiver is ineffective. *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100-01, 118 Cal. Rptr. 2d 862 (2002) (the "manifest one-sidedness of the no class action provision at issue is blindingly obvious. . . . Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact [defendant], because credit card companies typically do not sue their customers in class action lawsuits.");[11] *see also Jaramillo v. JH Real Estate Partners, Inc.*, 111 Cal App 4th 394, 3 Cal Rptr 3d 525 (2003) (agreement that subjected disputes arising from the condition of a leased residential premises to binding arbitration was unconscionable because it was not bilateral in that personal injury claims arising from the condition of the leased premises were largely, if not exclusively, tenant claims).

Second, the two forums chosen in the Note have a history of unfair treatment to consumers, thus virtually guaranteeing that ACS would win in any arbitration.[12]  The National Arbitration Forum (the "NAF") recently settled a lawsuit brought in 2008 by the San Francisco City Attorney who, in announcing the settlement, noted that the NAF is "a so-called 'arbitration mill,' which banks engaged to virtually assure they prevail over their credit card holders in binding arbitration proceedings."  Kurtz Decl. Exh. B at 1.  The full complaint against NAF, attached to the Kurtz Declaration as Exhibit C, describes in detail the egregious practices in which the NAF engaged against the consumers of California.

---

[11]   Although *Szetela* has been overruled by *Concepcion* to the extent it followed *Discover Bank*, the substantive unconscionability analysis is still viable.

[12]   The Note requires that arbitration take place at either the AAA of the NAF and leaves no alternative: "The party filing arbitration ***must*** choose one of the following two admistrators []: National Arbitration Forum; or American Arbitration Association."  (emphasis added).

The NAF's bias has been extensively noted by a consumer-rights organization, Public Citizen, whose 2007 publication titled *The Credit Trap: How Credit Card Companies Ensnare Consumers*, described the NAF as

> [A]rguably the most notoriously unfair of the few major companies that sell binding mandatory arbitration services nationally. While many prominent and respected lawyers are included on NAF's roster, its Minnesota staff steers the vast majority of its cases to a very small number of handpicked arbitrators. Naturally, these arbitrators have a financial incentive to move quickly through as many cases as possible.

Kurtz Decl. Exh. D at 5.

Public Citizen further Noted that NAF arbitrators can earn as much as $1 million per year and, not surprisingly, those who decide against consumers are chosen for repeat business. Moreover,

> In California, a small, busy cadre of 28 arbitrators handled nearly 9 out of every 10 NAF cases. This group ruled for businesses 95 percent of the time. Another 120 arbitrators handled slightly more than 10 percent of the cases in which an arbitrator was assigned. They ruled for businesses 86 percent of the time and for consumers 10 percent.

Kurtz Decl. Exh. D at 2.

The American Arbitration Association (the "AAA") is no better. An example of the AAA's bias to favor companies is gleaned from an account that took place in 2004-2005. In 2004 and 2005, plaintiff Thomas Cummings asked the AAA to handle his claim against AT&T as a class action. The staff at the AAA informed Mr. Cummings that it would let the arbitrator determine that issue. *See* Kurtz Decl. Exh. D at 48-49. A lawyer for AT&T then wrote to the President of the AAA demanding that he block the AAA staff's determination to let the arbitrator decide. *Id.* In a barely veiled threat, the letter cited to the rules of JAMS, Inc. (formerly Judicial Arbitration and Mediation Services, Inc.) permitting class arbitration and noted that JAMS appeared to be losing business as companies switched arbitration providers. *Id.* The lawyer for

AT&T then asked AAA's president to clarify the AAA's position on class arbitration so companies "can make informed decisions whether to include the AAA in their clauses." *Id.*

The AAA later reversed the case manager's decision and would not permit the claim to be heard on a class-wide basis. *Id.* The District Court judge who sent the case to arbitration later held that "the appearance has been created that counsel for AT&T used AT&T's economic power to successfully persuade the AAA to prematurely bend its own rules." *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 370 F. Supp. 2d 1135, 1141 (D. Kan. 2005).

The import of these events is clear: if Plaintiff is required to arbitrate his claim, on an individual basis, before either the NAF or the AAA, the odds will be stacked against him and in favor of his corporate opponent. Thus, the choice of these forums, and the Note's requirement that the parties "must" choose the NAF or the AAA is unconscionable.

## V.   **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that ACS's motion should be denied in its entirety.

Dated: New York, New York
          September 19, 2011

Respectfully submitted,

ABBEY SPANIER RODD
  & ABRAMS, LLP

By   s/Orin Kurtz
Karin E. Fisch
kfisch@abbeyspanier.com
Orin Kurtz
okurtz@abbeyspanier.com
212 East 39th Street
New York, New York 10016
212.889.3700

MCLAUGHLIN & STERN, LLP
Alan E. Sash
asash@mclaughlinstern.com
260 Madison Avenue
New York, New York 10016
212.448.1100

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Orin Kurtz, caused a copy of the accompanying

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT AFFILIATED COMPUTER SERVICES, INC.'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS IN THIS CASE**

**DECLARATION OF ORIN KURTZ IN OPPOSITION TO
DEFENDANT AFFILIATED COMPUTER SERVICES, INC.'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS IN THIS CASE**

**DECLARATION OF JOSHUA G. FENSTERSTOCK IN OPPOSITION TO
DEFENDANT AFFILIATED COMPUTER SERVICES, INC.'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS IN THIS CASE**

to be served upon the following counsel for defendants by the ECF system of the Southern

District of New York on September 19, 2011:

Edward K. Lenci, Esq.
elenci@hinshawlaw.com
HINSHAW & CULBERTSON, LLP
780 Third Avenue, 4th floor
New York, New York 10022
(212) 471-6200

*Attorneys for Defendant Affiliated Computer Services, Inc.*

 

 

                            _____ s/Orin Kurtz _____
                                  Orin Kurtz