UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSHUA G. FENSTERSTOCK, an individual, on          Case No. 08 Civ. 3622 (TPG)
his own behalf and on behalf of all similarly situated,

        Plaintiff,

    -against-

AFFILIATED COMPUTER SERVICES, INC.,

        Defendants.
------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW OF DEFENDANT AFFILIATED COMPUTER SERVICES, INC., IN SUPPORT OF ITS POSITION THAT, UNDER THE DOCTRINE OF ESTOPPEL, PLAINTIFF FENSTERSTOCK MUST ARBITRATE THE CLAIMS OF HIS CLASS ACTION COMPLAINT**

HINSHAW & CULBERTSON LLP
*Attorneys for Defendant*
*Affiliated Computer Services, Inc.*
780 Third Avenue, 4th Floor
New York, New York 10017
Tel. (212) 471-6200
Fax (212) 935-1166

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENTS IN REPLY.................................................................................................... 2

POINT I ................................................................................................................................. 2

THE DOCTRINE OF ESTOPPEL PLAINLY APPLIES ..................................................... 2

    1.    The Relevant Standard Bears Repeating................................................................. 2

    2.    The Agency Relationship Between ACS and EFP Permits ACS To Invoke The Note's Arbitration Provisions................................................................. 3

    3.    It Is Undisputed That Fensterstock's Claims Against ACS Are The Very Types Of Claims He Agreed To Arbitrate ..................................................... 6

    4.    Fensterstock's Claims Are Based On The Note ..................................................... 6

    5.    *Ragone* Applies Also ............................................................................................. 7

POINT II................................................................................................................................. 9

FENSTERSTOCK'S UNCONSCIONABILITY ARGUMENT IGNORES *AT&T MOBILITY V. CONCEPCION* AND IS MANIFESTLY FRIVOLOUS ........................ 9

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AT&T Mobility LLC v. Concepcion,*
   563 U.S.___, 131 S. Ct. 1740 (2011)..................................................................1, 9

*Butto v. Collecto Inc.,*
   2011 WL 3557310 (E.D.N.Y. Aug. 15, 2011).......................................................4, 5

*Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P.,*
   374 F. Supp. 2d 375 (S.D.N.Y. 2005)..............................................................2, 3, 5, 8

*Choctaw Generation Limited Partnership v. American Home Assurance Co.,*
   271 F.3d 403 (2d Cir. 2001)..................................................................................3

*Discover Bank v. Superior Court,*
   36 Cal. 4th 148 (Cal. 2005)................................................................................1, 9

*Lucy v. Bay Area Credit Svc LLC,*
   2011 WL 2006358 (D. Conn. May 23, 2011).......................................................4, 5

*Ragone v. Atlantic Video at the Manhattan Center,*
   595 F.3d 115 (2d Cir. 2010).............................................................................3, 7, 8

*Ragone v. Atlantic Video at the Manhattan Center,*
   2008 WL 4058480 (S.D.N.Y. 2008)......................................................................7

*Ross v. American Express Co.,*
   547 F.3d 137 (2d Cir. 2008)..................................................................................4, 8

*Sokol Holdings, Inc., v. BMB Munai, Inc.,*
   542 F.3d 354 (2d Cir. 2008)..................................................................................8

**Preliminary Statement**

Defendant Affiliated Computer Services, Inc. ("ACS") respectfully submits this Reply Memorandum of Law in further support of its motion to stay this action and compel arbitration of the causes of action asserted against ACS by Plaintiff Joshua G. Fensterstock ("Fensterstock") in the Class Action Complaint (the "Complaint").

A significant portion of Plaintiff's Memorandum of Law in Opposition dated September 19, 2011 ("Opp. Mem.") is dedicated to arguing that this Court should apply the very principles the U.S. Supreme Court abrogated and overruled in *AT&T Mobility LLC v. Concepcion,* 563 U.S.__, 131 S. Ct. 1740 (2011). In the Opp. Mem. at pp. 15-19, Fensterstock cites a number of California state and federal authorities in support of the very notions of procedural and substantive unconscionability that were the foundation of the thoroughly discredited decision of the California Supreme Court in *Discover Bank v. Superior Court,* 36 Cal. 4th 148 (Cal. 2005), *abrogated and overruled in disputes subject to the Federal Arbitration Act,* 131 S. Ct. 1740. In fact, a number of the authorities he cites were actually cited in *Discover Bank,* and those authorities are, accordingly, of questionable validity after *AT&T Mobility*. Fensterstock then seeks in vain to bolster that frivolous argument with criticisms of the two arbitral fora specified in the Note he signed, namely, the National Arbitration Forum ("NAF") and the American Arbitration Association ("AAA"). Those criticisms are pointless: NAF no longer handles consumer arbitrations, and AAA is a reputable organization.

Turning then to the well-established doctrine of estoppel, there can be no reasonable dispute it applies here. The Note contains an extremely broad, all-encompassing arbitration agreement. Fensterstock does not even address ACS's showing that each of his causes of action is a type of claim he agreed in the Note to arbitrate.

1

Moreover, each of Fensterstock's causes of action against ACS, including one for breach of the Note, is expressly premised on, depends on the existence of, the Note. Fensterstock acknowledges also, albeit grudgingly, that ACS was the agent of Education Finance Partners ("EFP") and is the agent of the current holder of the Note, and the Second Circuit has recognized that an agent of a signatory to a contract is a party entitled to estoppel. Additionally, the allegations of the Complaint lump ACS and EFP together in such a way that, under Second Circuit authority, amount to admissions of a relationship that entitles ACS to estoppel.

Furthermore, when Fensterstock applied for his loan and signed the Note, he sent the application and the Note to ACS, which then processed his application and originated his loan. Shortly thereafter, ACS sent Fensterstock details about his loan and advised him that ACS would be servicing the loan on EFP's behalf. Fensterstock did not make his first loan payment for several months thereafter. He attaches to his own declaration a letter he wrote to ACS, not EFP, the following year, and that letter shows he knew and understood that his dealings concerning his loan were to be with ACS.

In view of all this, ACS is entitled to invoke the arbitration provisions of the Note.

## ARGUMENTS IN REPLY

### POINT I

### THE DOCTRINE OF ESTOPPEL PLAINLY APPLIES

1.   **The Relevant Standard Bears Repeating**

Fensterstock harps on the fact that ACS is not a party to the Note and is not named in it. ACS does not deny those assertions. Instead, those assertions miss the point entirely. It is well-established that a non-signatory to a contract is entitled to invoke the arbitration provisions of a contract whenever "'the relationship among the parties, the

2

contracts they signed..., and the issues that had arisen' among them discloses that 'the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *Ragone v. Atlantic Video at the Manhattan Center,* 595 F.3d 115, 126-27 (2d Cir. 2010).

Additionally, Fensterstock's intent when he applied for his loan and signed the Note is irrelevant, as this Court recognized in *Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P.* 374 F. Supp. 2d 375, 378 (S.D.N.Y. 2005) ("The standard that governs such situations looks to the degree to which the issues sought to be arbitrated are 'intertwined with the agreement that the estopped party has signed,' not to evidence that the estopped party actually intended or expected that any dispute with the nonsignatory would be subject to arbitration."). It simply makes no sense to focus on his intent when the doctrine of estoppel assumes that the party seeking estoppel was not named in the contract that contains the arbitration provisions.[1]

### 2. The Agency Relationship Between ACS and EFP Permits ACS To Invoke The Note's Arbitration Provisions

Fensterstock acknowledges that, according to the contract between ACS and EFP (Exh. C of the Declaration of Jamie Broedel dated August 16, 2011 ("Broedel Decl.")), ACS was EFP's agent. Opp. Mem. at pp. 6 and 12, n.8. ACS is likewise the agent of the current holder of the Note under an assignment. Broedel Decl. ¶ 8. Additionally, ACS advised Fensterstock in 2007 that it was EFP's "servicing agent" (Exhibit B of the Declaration of Joshua G. Fensterstock dated September 19, 2011 ("Fensterstock Decl.")) and, before that, ACS advised him that it would service his loan on EFP's behalf, *i.e.,* it

---

[1] Fensterstock devotes a considerable portion of the Opp. Mem. to the "merits" of his claim. Opp. Mem. at pp 3-5. The merits, or the lack thereof, are not a consideration at this juncture. Nonetheless, because Fensterstock makes those allegations, ACS denies them for the record and will demonstrate, to the appropriate tribunal, that Fensterstock simply misunderstands, or chooses to ignore, how interest may be carried forward when he makes his monthly loan payments.

3

was EFP's agent (Exh. D of the Broedel Decl.). The Second Circuit has held that an agent of a signatory to a contract is one of the parties entitled to invoke the arbitration provisions of that contract under the doctrine of estoppel -- as plainly set forth in two quotations in the Opp. Mem. from *Ross v. American Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008) ("this Court has applied estoppel in cases involving ... agents, and other related business entities") (emphasis supplied). Opp. Mem. at pp. 2, 9. Additionally, one of the two recent, unreported decisions, of other courts, on which Fensterstock relies (Opp. Mem. at pp. 12-13), reiterates this point. *Butto v. Collecto Inc.*, 2011 WL 3557310, at *3 & *4 (E.D.N.Y. Aug. 15, 2011), *quoting Ross,* 547 F.3d at 144.

Fensterstock's heavy reliance on *Butto* and *Lucy v. Bay Area Credit Svc LLC,* 2011 WL 2006358 (D. Conn. May 23, 2011) (Opp. Mem. at pp. 12-13), is misplaced because the contracts in question in those cases expressly disclaimed that an agency relationship existed between the non-signatory defendant and the signatory other than the plaintiffs. *Lucy,* 2011 WL 2006358 at *3 & *6; *Butto,* 2011 WL 3557310 at *5 & *6. Here, as noted, and as conceded by Fensterstock, the contract between ACS and EFP names ACS as EFP's agent. Exh. C of the Broedel Decl.; Opp. Mem. at p. 6.

Additionally, in both *Lucy* and *Butto,* the non-signatories seeking an estoppel were bill collectors who became involved only when the relationship between the parties went sour, *i.e.,* when the plaintiffs allegedly defaulted on their payment obligations. Of course, bill collectors may, but not necessarily will, become involved later in the relationship between the signatories if one of the signatories becomes a debtor and the other, its creditor. In this case, by contrast, ACS and Fensterstock have a longstanding, developed relationship: Fensterstock sent ACS his loan application and the signed Note on or around August 8, 2006; ACS processed his application and originated his loan;

4

ACS communicated with him at the end of August 2006, advising that it, not EFP, would service his loan; and ACS serviced his loan from the start, before Fensterstock even made his first payment in October 2006, and continues to service it. Broedel Decl. at ¶¶ 7-11.

Even apart from the foregoing, both *Lucy* and *Butto* recognize that an additional ground for finding the requisite relationship between the parties for purposes of effecting an estoppel can be found in a plaintiff's own allegations to the effect that the non-signatory and the other signatory acted in concert. *Lucy,* 2011 WL 2006358 at *5, *citing Denney v. BDO Seidman, L.L.P.,* 412 F.3d 58, 70 (2d Cir. 2005); *Butto,* 2011 WL 3557310 at *6, *also citing Denney,* 412 F.3d at 70; *see also Carroll,* 374 F. Supp. 2d at 377 and 378 ("the amended complaint lumps Brown & Wood, Ruble, myCFO, and others together under the sobriquet 'Promoters' and treats them throughout as a unit" and "[h]aving elected [also] to tar Brown & Wood and Ruble with the very broad brush that they applied to other defendants, plaintiffs' attempt to avoid arbitration by pointing to their distinctiveness is unpersuasive."). In *Lucy* and *Butto*, the plaintiffs did not make such allegations. *Lucy,* 2011 WL 2006358 at *5; *Butto,* 2011 WL 3557310 at *6. Here, in yet another telling contrast, Fensterstock treats "Defendants" as a single unit throughout the Complaint (Complaint, at ¶¶ 2, 3, 31, 35, 36, 37, 38, 40, 41, 42, 43, 47, 55, 56, 57, 60, 61, 62) and repeatedly alleges that there was a "scheme" between ACS and EFP. *See* Complaint ¶¶ 2, 3, 37, 42, and 43.[2] Accordingly, even if the agency relationship between ACS and EFP were insufficient to entitle ACS to invoke the arbitration provisions of the Note (which is not the case), Fensterstock's own allegations do the trick for ACS.

---

[2] Fensterstock acknowledges later that his Complaint alleges that ACS and EFP acted in concert but, recognizing the hole he has dug for himself by his own allegations, asks that the Court not hold him to those allegations. Opp. Mem. at p. 15. ACS submits that it is unjust and unfair not to hold him to his allegations.

5

For these reasons, the Court should reject Fensterstock's contention, at pp. 12-15 of the Opp. Mem., that the relationship between ACS and EFP (and now the relationship between ACS and the Note's current holder) does not satisfy the first prong of the test set forth on p. 8 of the Opp. Mem.

### 3. It Is Undisputed That Fensterstock's Claims Against ACS Are The Very Types Of Claims He Agreed To Arbitrate

On pp. 6-7 of the brief it filed in August 2011, ACS showed that Fensterstock's claims are the very types of claims he agreed in the Note to arbitrate. Nowhere in the Opp. Mem. does Fensterstock dispute this. Accordingly, it should be deemed admitted that Fensterstock's claims are of the type he agreed in the Note to arbitrate.

### 4. Fensterstock's Claims Are Based On The Note

ACS explained, at pp. 10-11 of the brief it filed in August 2011 why each of Fensterstock's causes of action is premised upon, and depends upon the existence of, the Note. Even Fensterstock grudgingly acknowledges that "the Note does indeed have some relevance." Opp. Mem. at p. 14. Yet, despite this acknowledgment and what he actually alleges in the Complaint, Fensterstock makes the truly fatuous assertion that, because "there are no terms in the Note concerning the Amortization Penalty, and there are no terms in the Note concerning the amortization schedule which ACS has [allegedly] blatantly disregarded," his claim is really just one for "misallocation." Opp. Mem. at p. 14. The Court should reject this nonsensical word-play. As to his cause of action for breach of contract (Complaint ¶¶ 44-48), that cause of action is premised by definition on the existence of the Note that was allegedly breached. The cause of action for "unfair business practices" specifically alleges that the purported amortization penalty "drastically alter[s] the terms of the Note." Complaint ¶ 57. Finally, the cause of action for common law fraud states that the alleged penalty has resulted in Fensterstock's

"paying more than [he] contracted to pay." Complaint ¶ 61. Try as he might, Fensterstock cannot escape his own allegations, which show that his causes of action are premised on the Note, and depend on its existence.

### 5. *Ragone* Applies Also

ACS is not hanging its proverbial hat on the Second Circuit's decision in *Ragone,* as Fensterstock suggests. Opp. Mem. at p. 10. The foregoing facts already support the application of estoppel under the two prong test Fensterstock cites; that is, there is a close relationship between ACS and EFP and Fensterstock's claims against ACS are intertwined with the Note. *Ragone* simply provides an <u>additional</u> ground for finding that an estoppel is appropriate, namely, the dealings between Fensterstock and ACS.[3]

Here are the facts that demonstrate a relationship between Fensterstock and ACS based on their dealing with one another that bring this case within *Ragone*:

In the contract between ACS and EFP, ACS provided loan application, origination and servicing for EFP, and one of those loans was Fensterstock's. Broedel Decl. ¶¶ 5-9 and Exh. C of the Broedel Decl. Fensterstock signed his loan application and the Note on August 8, 2006. Opp. Mem. at p. 3. He then sent his application and the Note to ACS (the address in Utica on his application, and the phone and fax numbers on it, are those of ACS, not EFP. Broedel Decl. ¶ 11 Exh. B of the Broedel Decl. ACS processed his application and originated his loan, as it agreed with EFP to do. Broedel

---

[3] In fact, when *Ragone* was before this Court, this Court recognized that, typically, it is the relationship between the non-signatory and the signatory other than the plaintiff (e.g., the relationship between ACS and EFP and between ACS and the current holder of the Note) that is the focus in the estoppel analysis and that relationship was the basis for this Court's finding of an estoppel in *Ragone. Ragone v. Atlantic Video at the Manhattan Center,* 2008 WL 4058480 at *8 (S.D.N.Y. 2008). As demonstrated in section 2 of this Point I, the requisite agency relationship existed between ACS and EFP (and now exists with the Note's present holder). In affirming the decision of this Court, the Second Circuit found an additional relationship that supported an estoppel, namely, the dealings between the plaintiff herself and the non-signatory party.

7

Decl. ¶ 7. A mere three weeks after Fensterstock sent ACS his application and the Note, he received a notification from ACS that provided details about his loan and advised him that ACS would be servicing it. Exh. D of the Broedel Decl.; Opp. Mem. at p. 3. Fensterstock attaches to his own declaration a letter he wrote to ACS the following year (Exh. A of the Fensterstock Decl.) that shows he knew and understood that his dealings concerning his loan were to be with ACS.

In view of these facts, this case also fits squarely within the Second Circuit's holding in *Ragone,* as ACS explained in the brief it filed in August 2011. Fensterstock's answer is that *Ragone* supposedly requires that Fensterstock have had knowledge at the moment of contracting, *i.e.,* when he signed the Note on August 8, 2006, of ACS's role in originating and serving his loan. Opp. Mem. at pp. 2, 9-11. While *Ragone* suggests that plaintiff Ragone may have had such knowledge when she signed the agreement with Atlantic Video, Fensterstock simply misses the point of *Ragone*, which is not focused on the contractual intent of the plaintiff. *See also Carroll,* 374 F. Supp. 2d at 378 (recognizing that the intent of the estopped party is irrelevant).[4] It was not Ragone's intent but the relationship between her and ESPN that was dispositive. Additionally, even if Fensterstock did not actually know of ACS's involvement when he signed the Note on August 8, 2006, he knew all about ACS's involvement within a very short time therafter. In accordance with *Ragone,* the relationship between ACS and Fensterstock was indeed one that entitles ACS to estoppel.

---

[4]Fensterstock makes no effort to dispute ACS's showing that the facts of this case are not even remotely akin to the facts before the Second Circuit in *Ross v. American Express Co.,* 547 F.3d 137, and *Sokol Holdings, Inc., v. BMB Munai, Inc.,* 542 F.3d 354 (2d Cir. 2008). In those cases, the Second Circuit decided that an estoppel was inappropriate because the party seeking to invoke estoppel was a complete stranger to the relationship between the signatories to the contract. That is not the case here, where ACS was intimately involved in EFP's and Fensterstock's relationship from the very beginning.

**POINT II**

**FENSTERSTOCK'S UNCONSCIONABILITY ARGUMENT IGNORES AT&T MOBILITY V. CONCEPCION AND IS MANIFESTLY FRIVOLOUS**

In the Opp. Mem. at pp. 15-19, Fensterstock cites a number of California state and federal authorities in support of the very notions of procedural and substantive unconscionability that were the foundation of the abrogated and overruled decision of the California Supreme Court in *Discover Bank,* 36 Cal. 4th 148, *abrogated and overruled by AT&T Mobility*, 131 S. Ct. 1740. The Court can see this for itself by reference to *Discover Bank,* 36 Cal. 4th at 160-62. Indeed, the Court can see for itself also that several of the cases Fensterstock relies upon were relied upon, too, by the California Supreme Court in reaching its now discredited decision. Fensterstock even acknowledges that one of those decisions may no longer be good law after *AT&T Mobility* (Opp. Mem. at p. 19 n.11). The Court should reject Fensterstock's frivolous argument.

As further support for this frivolous argument, Fensterstock contends that the NAF and the AAA, the arbitral fora designated in the Note he signed, disadvantage consumers. Opp. Mem. at pp. 19-20. According to the website of NAF, that organization is no longer accepting any consumer arbitration claims[5] so Fensterstock's allegations are moot. As to the AAA, it is a highly reputable organization. What is more, Fensterstock was an attorney even when he signed the Note containing the requirement that he arbitrate before the AAA.

---

[5] A copy of the relevant page from NAF's website is attached to this reply brief. *See* www.adrforum.com/main.aspx?itemID=1529&hideBar=False&navID=175&news=3.

## Conclusion

In this case, the relationship of the parties and the issues and claims Fensterstock has raised are intertwined with the Note he signed. Accordingly the Court should stay this action and compel arbitration before the AAA of all the claims Fensterstock has asserted against ACS in the Complaint.

Dated: New York, New York
       October 3, 2011

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: _____
    Edward K. Lenci (EL 3207)

780 Third Avenue
New York, New York 10017
Tel: (212) 471-6200



Site Map   Contact Us

[_____] SEARCH

**ABOUT US**   **SERVICES**   **PROGRAMS & RULES**   **NEWSROOM**   **CONTACT US**

**ONLINE TOOLS**

Arbitration Overview

Mediation Overview

Domain Name Disputes

NJ No-Fault Disputes

Home / File a Claim

# File a Claim

The National Arbitration Forum is no longer accepting consumer arbitration claims.

For all other claims please send your claim form request to info@adrforum.com.

**RESOURCES**

Rules and Forms

File/Respond to a Claim, Complaint or Demand

Frequently Asked Questions

Drafting Mediation and Arbitration Clauses 📄 PDF

Download Reader Software

Home | Site Map | Terms & Conditions | Contact Us | RSS What is RSS?            ©2011 National Arbitration Forum