UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                                :
JOSHUA G. FENSTERSTOCK,                         :
                                                :
                        Plaintiff,              :        08 Civ. 3622 (TPG)
                                                :
        – against –                             :
                                                :        **OPINION**
EDUCATION FINANCE PARTNERS and                  :
AFFILIATED COMPUTER SERVICES,                   :
                                                :
                        Defendants.             :
                                                :
------------------------------------------------x

Plaintiff Joshua Fensterstock brings this claim on behalf of a class, alleging that defendants Education Finance Partners ("EFP") and Affiliated Computer Systems ("ACS") improperly apply an undisclosed fee to his student loan.

Shortly after the case was filed in 2008, defendants moved to compel arbitration and to stay the action pending the outcome of arbitration. In 2009, the court denied defendants' motion on the ground that the arbitration agreement was unconscionable under California law, which applies to this case pursuant to a choice-of-law provision. In coming to this conclusion, the court relied on Discover Bank v. Superior Court and its progeny. ACS appealed. The Second Circuit affirmed this court's decision, and ACS appealed to the Supreme Court. In 2011, the Supreme Court decided the case of AT&T Mobility LLC v. Concepcion, which overturned Discover Bank. In accordance

with that opinion, the Supreme Court vacated the judgment in this case and remanded it for further consideration.

On remand, ACS again moves to compel arbitration and to stay the proceedings in this court pending the outcome of that arbitration. Plaintiff opposes the motion on the ground that ACS lacks standing to compel arbitration and that the arbitration clause is unconscionable.

The court grants the motion to compel arbitration and the motion to stay this action pending the outcome of that proceeding.

Facts

The following facts are taking from the complaint and from the parties' submissions on the motion to compel arbitration. For the purposes of the current motion, they are presumed to be true.

Background

Plaintiff is an attorney who graduated from law school in 2003. EFP is a California corporation headquartered in California, specializing in private student loans and was the original holder of plaintiff's consolidated loan.[1] ACS is a corporation that services loans, including loans of EFP.

The agreement between EFP and ACS provides that ACS's offices in Utica, New York, would provide the following services, among others, to EFP with respect to consolidation loans: loan origination, loan servicing, billing of loan payments, receipt of loan payments, processing of loan payments,

---

[1] EFP apparently went into bankruptcy in 2008. ACS continues to service plaintiff's loan for its current holder. As discussed in further detail below, EFP is not a party to the current motion.

including the application of payments to interest and principal, and communications with borrowers.

In or about June 2006, plaintiff received a solicitation from EFP regarding private consolidation loans. The solicitation did not reference ACS. On or about August 8, 2006, plaintiff executed a Loan and Promissory Note (the "Note") for a consolidation loan from EFP. When plaintiff applied for his loan and signed the Note, he sent the application and the Note to ACS, which then processed his application and originated his loan.[2] However, ACS is not a party to the Note.

Pursuant to the Note, plaintiff received a consolidation loan in the amount of $52,915.49 with a fixed interest rate of 9.32%. Over the nearly thirty-year repayment period of the loan, plaintiff would be required to make 348 monthly payments of $440.74, for a total of approximately $153,377.52, with one final payment of $361.92 to be made in the year 2035.

On August 29, 2006, ACS sent Fensterstock details about his loan and advised him that ACS would be servicing the loan on EFP's behalf; ACS notified plaintiff that ACS "provides a Student Loan Billing Service to [EFP]," and would be "working with" EFP and plaintiff as plaintiff repays his loan. The notification provided plaintiff with his account information and advised him to remit payment to ACS at the address indicated and to contact ACS if he had any questions.

---

[2] The address, phone number, and fax number on plaintiff's application were those of ACS, not EFP, although plaintiff was apparently unaware of this fact at the time.

Beginning on October 14, 2006, and through the present, plaintiff has made timely payments on his loan and has not been charged any late fee nor declared in default under the terms of the Note.

On August 27, 2007, plaintiff sent a letter to ACS, asking to see the legal documentation governing ACS's relationship with EFP and asking whether ACS was a legal Holder of the Note. In response, ACS acknowledged that it is not a legal Holder of the Note.

The "Amortization Penalty" and the Terms of the Note

According to plaintiff, ACS determines how much of a loan payment to apply to principal (rather than interest) based on the date on which the payment is received, rather than based on the due date of the payment. Thus, if a payment is received on any day other than the due date—including before the due date—it will not be applied to principal correctly, according to plaintiff. Plaintiff claims that this amounts to a hidden penalty on his loan—which he refers to as the "Amortization Penalty"—since it causes the principal to be paid off more slowly than it should be. Plaintiff alleges that this penalty was not a part of the Note and was never disclosed to plaintiff before he signed the Note. Over the course of the loan, interest will accrue on this inflated amount of principal. By the time plaintiff filed this action in April 2008, he claimed to have accumulated $263.19 in damages. However, he calculates that this amount will grow to "thousands of dollars" by the time the final payment is due in October 2035. Plaintiff believes that the same technique is applied to the loans held by the other members of the putative class.

In order to cease the accrual of further damages and avoid having to make an extra payment at the end of the loan term, plaintiff's complaint includes a request for an injunction.

Plaintiff's Note states that the terms contained therein constitute the entire agreement between EFP and plaintiff with respect to plaintiff's loan, and there are no other written or oral agreements or understandings between them. The parties to the Note are specifically identified as plaintiff, EFP, and any subsequent Holder of legal title to the Note.

Plaintiff's Note contains an extensive arbitration clause. Among other things, the arbitration clause covers

> [c]laims relating to: 1) any and all aspects of my Account including without limitation the origination, establishment, terms, treatment, operation, handling, billing, servicing, limitations on or termination or acceleration of my Account; 2) any disclosures or statements relating to my account; 3) the application, enforceability or interpretation of my Account, including this arbitration provision. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

As noted above, plaintiff seeks to bring this claim on behalf of a class. However, the arbitration clause in plaintiff's Note also covers

> Claims made as part of a class action or other representative action, and the arbitration of such Claims must proceed on an individual (non-class, non-representative) basis.

Therefore, if the claim proceeds to arbitration, plaintiff will be required to proceed as an individual. No class action will be available.

The arbitration clause chooses California law and requires the party filing arbitration to choose either the National Arbitration Forum (the "NAF") or

the American Arbitration Association (the "AAA").

Procedural History

Plaintiff filed his complaint on April 15, 2008. The complaint asserts claims for breach of contract, unfair business practices, and fraud. As noted above, plaintiff also seeks an injunction. On June 6, 2008, ACS moved to compel arbitration and to stay the action pending completion of the arbitration.

On March 24, 2009, the court denied defendant's motion to compel arbitration, holding that the Arbitration Clause was unconscionable under Discover Bank v. Superior Court, 36 Cal. 4th 148 (Cal. 2005), and its progeny. In Discover Bank, the Supreme Court of California had held that when an arbitration clause requires a consumer to waive the right to bring claims on behalf of a class, that waiver is unconscionable if (1) the waiver is found in a consumer contract of adhesion, (2) in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and (3) it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money. See Fensterstock v. Educ. Fin. Partners, 618 F. Supp. 2d 276 (S.D.N.Y. 2009) ("Fensterstock I") (citing Discover Bank, 36 Cal. 4th at 162-63).

ACS appealed this court's decision, and the Second Circuit affirmed. See Fensterstock v. Educ. Fin. Partners, 611 F.3d 124 (2d Cir. 2010) ("Fensterstock II"). ACS's subsequent petition for rehearing *en banc* was denied, and ACS

then petitioned the Supreme Court for *certiorari*.³

On April 27, 2011, the Supreme Court vacated the Second Circuit's decision and remanded the case "for further consideration in light of AT&T Mobility LLC v. Concepcion, 563 U.S. ___, 131 S. Ct. 1740 (2011)." See Affiliated Computer Servs., Inc. v. Fensterstock, 131 S. Ct. 2989 ("Fensterstock III").  In Concepcion, the Supreme Court held the Federal Arbitration Act (the "FAA") preempts California's judicial rule regarding the unconscionability of class arbitration waivers in consumer contracts, thereby overturning Discover Bank and its progeny.  In light of that ruling, the Second Circuit remanded Fensterstock to this court, holding that

> Because the Discover Bank rationale is no longer viable, and because the district court in Fensterstock I likewise had not reached the merits of plaintiff's standing contention or ACS's defense to that contention, see 618 F. Supp. 2d at 280, we hereby REMAND this matter to the district court for initial consideration of those arbitrability issues, as well as any other issues that are not foreclosed by Fensterstock III.

Fensterstock v. Educ. Fin. Partners, 426 Fed. App'x 14, 15 (2d Cir. 2011) ("Fensterstock IV").

## Discussion

The FAA provides that an agreement to arbitrate is "valid, irrevocable, and enforceable."  9 U.S.C. § 2.  The FAA was enacted "to replace judicial indisposition to arbitration."  Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S.

---

³ Although EFP joined ACS's initial motion to compel arbitration in this court, it did not appeal the court's order of March 24, 2009.  Accordingly, there is no longer any contractual challenge to plaintiff's entitlement to litigate his claims against EFP and to litigate them on a class basis.

576, 581 (2008). The Second Circuit has stated that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." Arciniaga v. General Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (internal quotations omitted).

As noted above, defendant ACS moves to compel arbitration of plaintiff's claims. Plaintiff argues that ACS cannot rely on the arbitration clause in the Note, which was a contract between plaintiff and EFP. Plaintiff also argues that the arbitration clause is unconscionable and therefore void. An issue has also been raised as to whether plaintiff is estopped from attempting to avoid arbitration.

Estoppel

Arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit. JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004). However, where parties have contractually agreed to arbitrate, they may be required to submit to arbitration even against a non-signatory. Under the doctrine of equitable estoppel, a non-signatory can compel arbitration "where (i) there is a close relationship between the parties and controversies involved and (ii) the signatory's claims against the non-signatory are intimately founded in and intertwined with the underlying agreement containing the arbitration clause." Denney v. Jenkens & Gilchrist, 412 F. Supp. 2d 293, 297 (S.D.N.Y. 2005) (internal quotations omitted); see also Ragone v. Atlantic Video, 595 F.3d 115, 126-27 (2d Cir. 2010) (a non-signatory can compel a signatory to arbitrate

where "the relationship of the parties, the contracts they signed . . . , and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed" (internal quotations omitted)).

The standard looks to the inquiry described above, "not to evidence that the estopped party actually intended or expected that any dispute with the nonsignatory would be subject to arbitration. The doctrine therefore appears to depend upon the broad federal policy favoring arbitration . . . ." Carroll v. Leboeuf, Lamb, Greene & MacRae, L.L.P., 374 F. Supp. 2d 375, 378 (S.D.N.Y. 2005).

As to the first requirement of a close relationship between the parties and controversies, courts have held that there "must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 359 (2d Cir. 2008); accord Ragone, 595 F.3d at 127.

In many cases applying estoppel, the non-signatory party "has had some sort of corporate relationship to a signatory party; that is, [the Second Circuit] has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities." Ross v. Am. Express Co., 547 F.3d 137, 144 (2d Cir. 2008). However, there need not be such a corporate relationship in order to trigger the application of the doctrine of estoppel. The Second Circuit

has held that an agent of a signatory to a contract is one of the parties entitled to invoke the arbitration provisions.  See id.; Carroll, 374 F. Supp. 2d at 378.

The Second Circuit also applied estoppel in Ragone, 595 F.3d 115.  In that case, the non-signatory defendant was not mentioned in the initial employment contract between plaintiff Ragone and the signatory.  However, it was "plain that when Ragone was hired by [signatory] AVI, she understood [non-signatory] ESPN to be, to a considerable extent, her co-employer."  Id. at 127; see also id. at 128 ("Ragone admits that she knew from the date of her employment by AVI that she would work with and be supervised by ESPN personnel in the ordinary course of her daily duties.  This knowledge that she would extensively treat with ESPN personnel is sufficient to demonstrate the existence of a relationship between Ragone and ESPN that allows the latter to avail itself of the arbitration agreement between Ragone and AVI.").

In this case, pursuant to the contract between ACS and EFP, ACS was EFP's agent.  As noted above, ACS is also the agent of the current holder of the Note.  However, ACS was not mentioned in the Note between plaintiff and EFP.  Although plaintiff apparently mailed his application and Note to ACS when he applied for the loan, there is no indication that he was aware that the address to which he mailed the materials was that of ACS, rather than EFP.  Plaintiff executed the Note on August 8, 2006, and subsequently received a letter from ACS on August 29, 2006.  It appears that plaintiff first learned that ACS would be servicing his Note upon receiving that letter.

Plaintiff argues that he never agreed to arbitrate with ACS and that an

agency relationship does not entitle ACS to estoppel.  He further argues that the relevant inquiry is the relationship between plaintiff and ACS at the time of contracting, not afterward.  In order for equitable estoppel to apply, there must be "a close relationship between the parties and controversies involved."  See Denney, 412 F. Supp. 2d at 297.  Plaintiff worked with ACS almost from the very beginning of his loan repayment, and ACS served as EFP's agent for the servicing of the loan.  Plaintiff sued both EFP and ACS and made claims against both for breach of contract, unfair business practices, and fraud.  Plaintiff refers to ACS and EFP collectively as "Defendants" throughout the complaint.  The court finds that there is a sufficiently close relationship among plaintiff, EFP, ACS, and the controversies in this case to warrant estopping plaintiff from avoiding arbitration against ACS.

In addition to a close relationship among the parties and controversies, as noted above, the law also requires that the claims be "intimately founded in and intertwined with the underlying agreement" in order for estoppel to apply.  See id.  Estoppel is appropriate when "a signatory's claims against a non-signatory make[] reference to or presume[] the existence of [a] written agreement."  JLM Indus., 387 F.3d at 178 (internal quotations omitted).  Plaintiff's key assertion in this case is that ACS has applied an Amortization Penalty that was not disclosed in—and/or is contrary to the terms of—the Note.  Plaintiff's claim is intertwined with the Note.

The court finds that this case meets both requirements for the application of the doctrine of equitable estoppel, and that plaintiff is therefore

estopped from avoiding arbitration against ACS.

<u>Unconscionability</u>

As noted above, plaintiff argues that the arbitration clause is unconscionable and therefore void. Under California law, a court can refuse to enforce a contract clause that the court finds "to have been unconscionable at the time it was made." Cal. Civ.Code Ann. § 1670.5(a). "A finding of unconscionability requires a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." <u>Concepcion</u>, 131 S. Ct. at 1746 (internal quotations omitted) (quoting <u>Armendariz v. Foundation Health Pyschcare Servs., Inc.</u>, 24 Cal.4th 83, 114 (2000)).

As discussed above, the court originally denied defendants' motion to compel arbitration on this ground due to the class action waiver in the arbitration clause at issue. However, the case on which the court relied in making that ruling was subsequently overturned by the Supreme Court. <u>See</u> <u>Concepcion</u>, 131 S. Ct. 1740. Nonetheless, <u>Concepcion</u> did not completely do away with unconscionability as a defense to arbitration agreements. <u>In re Checking Account Overdraft Litig.</u>, No. 09-MD-2036-JLK, slip op. at 8 (S.D. Fla. Sept. 1, 2011). The Supreme Court recognized that the FAA makes agreements to arbitrate "'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" <u>Concepcion</u>, 131 S. Ct. at 1744 (quoting 9 U.S.C. § 2). Therefore, the decision "preserved 'generally applicable contract defenses, such as fraud, duress, or

unconscionability,' so long as the defenses do not 'apply only to arbitration or . . . derive their meaning from the fact that an agreement to arbitrate is at issue.'" Cmty. State Bank v. Strong, 651 F.3d 1241, 1268 n.28 (11th Cir. 2011) (quoting Concepcion, 131 S. Ct. at 1746).

Plaintiff argues that the arbitration clause is both procedurally and substantively unconscionable. As noted above, plaintiff seeks to proceed on behalf of a class, but he would be prohibited from doing so in arbitration.

Plaintiff argues that the arbitration provision is substantively unconscionable for two reasons: (1) because it bars class actions, and (2) because the NAF and the AAA, the two arbitration forums selected in the Note, have, according to plaintiff, "a history of unfair treatment to consumers, thus virtually guaranteeing that ACS would win in any arbitration."

First, plaintiff states that, under California law, an arbitration provision is substantively unconscionable if it leads to "overly harsh or one-sided results." See Concepcion, 131 S. Ct. at 1746 (quoting Armendariz, 24 Cal.4th at 114). Plaintiff argues that the bar on class actions in the arbitration clause in his Note is therefore substantively unconscionable because it is one-sided. Plaintiff argues that although the class action waiver prohibits both plaintiff and ACS from bringing class actions, in reality this is a false mutual waiver because ACS is highly unlikely to bring a class action suit against plaintiff. The one-sided effect of the class action waiver, however, does not necessarily lead to harsh or one-sided *results* in the ultimate arbitration. See id. Furthermore, the case on which plaintiff relies for the proposition that a class-

action waiver must be mutual was decided well before the Supreme Court's 2011 decision in Concepcion. See Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1100-01 (2002). The Supreme Court's holding that class action waivers in arbitration clauses are permissible did not depend on the mutuality of that waiver. See Concepcion, 131 S. Ct. at 1756. Under Concepcion, the class action waiver in plaintiff's note is not substantively unconscionable.

Second, with respect to the arbitration forums selected, plaintiff's defense clearly applies "only to arbitration" and derives its "meaning from the fact that an agreement to arbitrate is at issue." See id. at 1743. Such a defense is impermissible under Concepcion. Furthermore, according to its website, the NAF no longer accepts consumer arbitration claims, and the AAA is therefore the only remaining arbitration forum. The AAA is a highly reputable organization. The clause is not substantively unconscionable.

Plaintiff argues that the clause is procedurally unconscionable because it is a "take it or leave it" contract of adhesion. Plaintiff argues that defendants have superior bargaining power, that defendants drafted the Notes, and that plaintiff and the class had no meaningful choice with regard to the terms of the Notes. The court need not reach this issue since California law requires that a clause be both procedurally and substantively unconscionable in order to be unenforceable, and the court finds that the clause is not substantively unconscionable.

Plaintiff's argument with respect to unconscionability is without merit. The court grants defendant's motion to compel arbitration.

Motion to Stay Proceedings

Under the FAA, if a case brought in federal court is subject to a contractual provision requiring arbitration, the court must usually stay the lawsuit pending the outcome of the arbitration. 9 U.S.C. § 3.

In this case, ACS moves to stay the proceedings in this case pending the outcome of arbitration. The court grants ACS's motion.

## Conclusion

For the foregoing reasons, the court grants ACS's motion to compel arbitration and its motion to stay the proceedings in this case pending the outcome of arbitration.

SO ORDERED.

Dated: New York, New York
August 30, 2012

*Thomas P. Griesa*
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/30/12